

**FILED**

Jun 19 2015, 8:41 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Kurt A. Young | Gregory F. Zoeller |
| Nashville, Indiana | Attorney General of Indiana |
| | |
| | Katherine Modesitt Cooper |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alexander K. Jerden, | June 19, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 07A05-1410-CR-498 |
| v. | Appeal from the Brown Circuit Court |
| State of Indiana, | Lower Court Cause No. 07C01-1405-CM-162 |
| *Appellee-Petitioner.* | The Honorable Wendy W. Davis, Judge |

**Pyle, Judge.**

# Statement of the Case

Appellant/Defendant, Alexander K. Jerden ("Jerden"), appeals his convictions for two counts of Class B misdemeanor reckless driving.[1] On appeal, he argues that several of the prosecutor's statements during closing argument constituted misconduct because they inflamed the passions and prejudices of the jury and encouraged the jury to convict him for reasons other than his guilt. He also argues that the trial court erred in notifying the Indiana Bureau of Motor Vehicles ("BMV") that he received guilty verdicts for all four of his charges, when two of the verdicts merged, and the trial court entered judgments of conviction for only two of his charges. We conclude that, regardless of whether the prosecutor committed misconduct, Jerden did not object to the closing argument, and the prosecutor's statements did not amount to fundamental error. However, we find that the trial court erred in notifying the BMV of all four of Jerden's guilty verdicts because the trial court's notification did not identify that two of the verdicts merged with the other two and did not result in convictions. We reverse in part and remand with instructions for the trial court to correct its notice to the BMV.

We affirm in part, reverse in part, and remand with instructions.

---

[1] IND. CODE § 9-21-8-52(a)(1), (3). We note that this statute was amended effective January 1, 2015. However, because Jerden committed his offenses in 2014, we will apply the statute in effect at the time.

# Issues

1. Whether the prosecutor's statements during closing argument constituted prosecutorial misconduct.

2. Whether the trial court erred in notifying the BMV that Jerden was found guilty of all four of his charges, even though the trial court merged two of the guilty verdicts and entered judgments of conviction on only two of the counts.

# Facts

At about 9:00 or 10:00 a.m. on the morning of April 13, 2014, Jason Woods ("Woods"), was driving eastbound on State Road 46 to Bloomington, Indiana, when a silver BMW came up behind him. The BMW crossed the double solid yellow lines separating the eastbound lane from oncoming traffic and passed Woods, driving "at a high rate of speed." (Tr. 57). Soon thereafter, a black Chevrolet also came up behind Woods, crossed the double solid yellow lines, and passed Woods, also driving "at a high rate of speed." (Tr. 57). Woods pulled over at his grandfather's house on State Road 46 and called the Sheriff's Department to report the two cars.

The Nashville Police Department sent out a dispatch about the two vehicles to its police officers. Ben Seastrom ("Deputy Seastrom"), the Chief Deputy of the Department, heard the dispatch and started to travel westward to intercept the drivers. He stopped at a red traffic light at the intersection of State Road 46 and saw that there were two cars traveling on State Road 46—one in the eastbound lane and one in the turn lane. Deputy Seastrom then heard a revving noise and

observed a dark-colored pickup truck, a silver BMW, and a black passenger car—the Chevrolet—cross the double yellow lines and pass the two cars. The three passing cars were traveling "[w]ell above the forty (40) mile[s] an hour [speed limit] zone," such that Deputy Seastrom estimated that they were driving seventy-five or eighty miles per hour, or "[a]t least double" the speed limit. (Tr. 66, 67).

[4] After witnessing the three cars, Deputy Seastrom activated his lights and siren and turned onto State Road 46 to intercept the vehicles. He followed the cars, driving at a speed of ninety to one hundred miles per hour, but the drivers did not stop. Deputy Seastrom notified dispatch that they were refusing to stop. However, as he got closer to the cars, the Chevrolet pulled to the side of the road. At that point, the Deputy continued to follow the truck and BMW, still driving at around ninety to one hundred miles per hour. He saw the truck and BMW pass another car but, eventually, as he got closer, the BMW pulled to the side of the road.

[5] Deputy Seastrom stopped behind the BMW and learned that Jerden was the driver. He asked Jerden "why he [had been driving] that way[,]" and Jerden said that "he did [not] know what [Deputy Seastrom] was talking about." (Tr. 74). The deputy wrote Jerden a ticket for improper passing within one hundred feet of an intersection. He considered charges for aggressive driving and reckless driving but did not have his legal book available to cite either of those statutes.

[6] In the meantime, an additional police officer, Sergeant Michael Moore ("Sergeant Moore"), conducted a traffic stop of the black Chevrolet that had previously stopped. When Deputy Seastrom finished his traffic stop of Jerden, he went to meet Sergeant Moore. Joseph Durre ("Durre"), the driver of the Chevrolet, told Deputy Seastrom that he and Jerden had met the driver of the truck outside of town and were on their way to Columbus, Indiana, to go to a car race. Deputy Seastrom wrote a ticket for Durre, also with the charge of improper passing within one hundred feel of an intersection.

[7] Subsequently, on May 20, 2014, the State charged Jerden with Count I, Class B misdemeanor reckless driving; Count II, Class A misdemeanor reckless driving; Count III, Class C infraction passing in a no passing zone; and Count IV, Class C infraction speeding. The trial court held a joint jury trial for Jerden and Durre, whom the State had also charged, on September 24, 2014.

[8] At trial, Deputy Seastrom testified that he believed the manner the truck, BMW, and Chevrolet had been driving had endangered others on the road. He said that at their speeds and the way they were driving, he did not feel that they would have been able to avoid another vehicle if it had come out of one of the turns.

[9] Jerden testified to his version of events, which was that the truck in front of him had been driving erratically. He testified that when he reached the intersection where Deputy Seastrom had been, the truck suddenly pulled out into the other

lane, revealing a stopped car in Jerden's lane. Jerden said that he had to swerve to avoid the car. Then, "in a fit of fury" he accelerated to forty miles per hour in an attempt to capture the truck's license plate number, but he was not able to read the number. (Tr. 103).

[10] At the conclusion of the presentation of evidence, the prosecutor made his closing argument, and Jerden did not object to any portion of the argument. Thereafter, the jury found Jerden guilty as charged. The court held a sentencing hearing and found that Jerden's convictions for Counts III and IV merged with Counts I and II. It entered written judgments of conviction for Counts I and II only and sentenced Jerden to 180 days for each count, all suspended to probation with forty (40) hours of community service. The trial court also ordered the sentences to run concurrently. On September 30, 2014, the Clerk transmitted to the BMV SR-16 forms showing that Jerden was found guilty of all four Counts, including Counts III and IV. Jerden now appeals.

# Decision

[11] On appeal, Jerden argues that: (1) several of the prosecutor's statements during closing argument constituted prosecutorial misconduct because, according to Jerden, they were meant to inflame the passions and prejudices of the jury so that the jury would convict him for reasons other than his guilt; and (2) the trial court erred by notifying the BMV that Jerden had been found guilty on all four

of his charges, when the trial court entered a judgment of conviction on only two of the charges. We will address each of these arguments in turn.

### 1. Prosecutorial Misconduct

First, Jerden asserts that several of the prosecutor's closing statements constituted prosecutorial misconduct. In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine: (1) whether misconduct occurred, and, if so, (2) "'whether the misconduct under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise.'" *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (quoting *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006)), *reh'g denied*. A prosecutor has the duty to present a persuasive final argument; thus, placing a defendant in grave peril, by itself, is not misconduct. *Id.* Instead,

> "[w]hether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by *the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct."

*Id.* (quoting *Cooper*, 854 N.E.2d at 835) (emphasis added in *Ryan*).

To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Id.* Failure to do so results in waiver. *Stevens v. State*, 691 N.E.2d 412, 420 (Ind. 1997). Our standard of

review is different where a claim of prosecutorial misconduct has been waived for a failure to preserve the claim of error. *Id.* In such a case, the defendant must establish not only the grounds for prosecutorial misconduct but also that the prosecutorial misconduct constituted fundamental error. *Id.* at 667-68.

[14] Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "'make a fair trial impossible.'" *Id.* at 668 (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)). In evaluating the issue of fundamental error, our task is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury— including evidence admitted at trial, closing argument, and jury instructions— to determine whether the misconduct had "such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible." *Id.* (emphasis in original). Fundamental error is meant to permit appellate courts "a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel . . . ." *Id.* Here, Jerden acknowledges that he did not object to the prosecutor's closing argument at trial. Accordingly, we must determine whether the prosecutor's statements during his closing argument were fundamental error. *See id.* at 667-68.

[15] Jerden asserts that the prosecutor's arguments resulted in fundamental error because they were calculated to inflame the passions and prejudices of the jury

and to encourage the jury to convict him for reasons other than his guilt. Specifically, he cites the following statements:

> You heard Deputy Seastrom talk about how he believed they were going seventy-five (75) miles an hour through that intersection. That it took him ninety (90) to a hundred (100) miles an hour to catch up to them out by Snyder . . . out past Snyder farms and past Parkview Road and past Eagle Creek and on a Sunday morning pulling them over in front of Parkview Nazarene at eight o'clock (8:00) in the morning. They put people in danger.

> \* \* \*

> Our roads are nor playgrounds. Our roads are not places for young men who think that they can drive faster and better than other people. Our roads are used by families going to church on Sunday mornings. They are used by people going to and from work.

(Tr. 119-23). Jerden argues that these statements were inappropriate because there was no evidence at trial that he was pulled over by a church, and the fact that it was Sunday morning was not relevant to whether he was driving recklessly. He also cites the prosecutor's arguments:

> So, on April 13th of this year these two (2) men went racing through our community. To them it was just a thirty (30) mile stretch of road. To us, though, it's the safety of our neighbors. The [defendants] put us in danger by the way they were driving that day.

> \* \* \*

> Ladies and Gentlemen, these two (2) men thought that they could race on our tr [sic] . . . on our road. They thought that they could use their well[-]honed driving skills, but in fact what they did is they put us in danger, and that's what danger . . . reckless driving is.

(Tr. 116-17). He contends that there was no evidence produced at trial to show that he viewed the road as "just a thirty . . . mile stretch of road." (Tr. 115). In addition, he argues that these passages highlighted the fact that he was not from the community, emphasized to the jury that he viewed himself as a superior driver, and told the jury that he viewed the community as only a stretch of road to be traveled. Jerden asserts that the prosecutor's emphasis on these factors inflamed the prejudices of the jury and convinced the jury to convict him for reasons other than his guilt.

[16] As Jerden argues, it is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than his guilt or to phrase a final argument in a manner calculated to inflame the passions or prejudice of a jury. *Neville v. State*, 976 N.E.2d 1252, 1264 (Ind. Ct. App. 2012), *trans. denied.* Indiana Professional Conduct Rule 3.4(e) provides that:

> A lawyer shall not . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.

While Jerden is correct regarding the legal standard to be applied, we disagree that prosecutorial misconduct occurred here. *See Booher v. State*, 773 N.E.2d 814, 819 (Ind. 2002) (prosecutors are free to make arguments from which a jury can draw reasonable inferences from the evidence).

[17] However, we need not address whether the prosecutor's statements constituted misconduct because none of the statements Jerden contests were such that they would have made a fair trial impossible within the context of the rest of the information given to the jury. As we stated above, to qualify as fundamental, an error must have "such *an undeniable and substantial effect on the jury's decision that a fair trial [is] impossible*." *Ryan*, 9 N.E.3d at 668 (quoting *Benson*, 762 N.E.2d at 756) (emphasis in original). Where there is overwhelming independent evidence of a defendant's guilt, error made by a prosecutor during the closing argument is harmless. *Coleman v. State*, 750 N.E.2d 370, 375 (Ind. 2001).

[18] In light of the information given to the jury here, the prosecutor's statements did not result in fundamental error. First, we must note that, even though Jerden disputes the prosecutor's emphasis on the fact that he considered himself to be a superior driver, Jerden admitted as much in his own closing argument. It was also uncontroverted at trial that Jerden and Durre were from out of town and were traveling to a car racing event. The prosecutor's references to these factors were a permissible characterization of the evidence.

[19]    Second, there is overwhelming independent evidence to support the jury's verdict. For Count I, the State was required to prove that Jerden "operate[d] a vehicle" and "recklessly: (1) [drove] at such an unreasonably high rate of speed . . . under the circumstances as to: (A) endanger the safety of others; or (B) block the proper flow of traffic." I.C. § 9-21-8-52(a)(1). For Count II, the State was required to prove that Jerden "operated a vehicle" and recklessly "[drove] in and out of a line of traffic, except as otherwise permitted[.]" I.C. § 9-21-8-52(a)(3). Woods testified that a silver BMW passed him on State Road 46 driving "at a high rate of speed," and Deputy Seastrom also observed Jerden's BMW cross the double yellow lines and pass cars on two occasions. (Tr. 57). In addition, the deputy testified that Jerden was driving "[w]ell above the forty (40) mile an hour [speed limit] zone," to the point that he estimated Jerden was driving "[a]t least double" the speed limit. (Tr. 66, 67). Deputy Seastrom had trouble catching up with Jerden, even though he was driving ninety to one hundred miles per hour. In light of this overwhelming independent evidence, we conclude that there was no error, and, even if there was, any error in the prosecutor's closing argument was harmless. *See Coleman*, 750 N.E.2d at 375.

[20]    Third, prior to deliberation, the trial court instructed the jury that its decision should not be based on sympathy or bias and that "[s]tatements by the [p]rosecuting [a]ttorney or a [d]efendant, when he was not under oath, [were] not evidence." (Tr. 129). One remedy for prosecutorial misconduct is to admonish the jury, *see Ryan*, 9 N.E.2d at 667, and these final jury instructions

accomplished the same ends because they emphasized that the prosecutor's statements were not evidence and that the jury should reach its verdict based on the evidence and law. Accordingly, in light of these instructions and the above factors, we conclude that the prosecutor's statements were not fundamental error.

## 2. Notification to BMV

Next, Jerden argues that the trial court erred when it sent SR-16 forms, showing that he was found guilty of all four of his charges, to the BMV even though the trial court had entered judgments of conviction on only two of the four counts. The State responds by citing our supreme court's holding that a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is "unproblematic" as far as double jeopardy is concerned. *Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006). The State also notes that it does not seem possible to notify the BMV that no convictions were entered on Jerden's Counts III and IV because the SR-16 form only has options to notify the BMV of findings of "guilty," "dismissed," "not guilty," "*nolle prosecui* [sic]," "vacated," and "deferred"—none of which apply here. (App. 89-92).

INDIANA CODE § 9-30-13-0.5 provides that:

> (a) A court shall forward to the bureau a certified abstract of the record of the *conviction* of a person in the court for a violation of a law relating to motor vehicles.
>
> *   *   *

(e) An abstract required by this section must be in the form prescribed by the bureau and, when certified, shall be accepted by an administrative agency or a court as prima facie evidence of the conviction and all other action stated in the abstract.[2]

(Emphasis added). Jerden directs us to the "form prescribed by the bureau," which is the SR-16 form. Ind. Bureau Motor Vehicles, *Suspension, Reinstatement and Insurance Forms*, IN.GOV, http://www.in.gov/bmv (last visited May 29, 2015); I.C. § 9-30-13-0.5. According to the BMV's website,

> [The SR-16 form] is used by courts to notify the BMV that a driver has been *convicted* of a citation, failed to appear for a citation, or failed to pay a citation for violating a motor vehicle law. This form also notifies the BMV when matters have been dismissed or orders have been vacated. Drivers may not submit SR-16 forms at license branches. SR-16 forms may only be submitted by a court directly to the BMV.

Ind. Bureau Motor Vehicles, *Suspension, Reinstatement and Insurance Forms*, IN.GOV, http://www.in.gov/bmv (last visited May 29, 2015) (emphasis added).

[23] As the State notes, our supreme court has previously held that a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is "unproblematic" as far as double jeopardy is concerned. *See*

---

[2] This provision has been amended, effective July 1, 2015. However, we will apply the version of the statute in effect at the time of Jerden's offenses.

*Green*, 856 N.E.2d at 704. However, the issue here is not whether the trial court violated the prohibition against double jeopardy, as it is undisputed that the court entered judgments of conviction and sentenced Jerden on only Counts I and II. Instead, the issue is whether the trial court erred by reporting the jury's findings of "guilty" on Counts III and IV to the BMV. We conclude that it did.

[24] Our basis for this conclusion rests on the difference between a guilty verdict and a judgment of conviction, which we have previously noted are not equivalent. *Haddix v. State*, 827 N.E.2d 1160, 1165 (Ind. Ct. App. 2005), *trans. denied.* "A verdict is the jury's finding of guilt, but such finding carries no legal consequences unless the trial court enters a judgment of conviction on the verdict." *Id.* The language of INDIANA CODE § 9-30-13-0.5 refers to "convictions." Specifically, it provides that a court need only forward to the BMV "a certified abstract of the record of the *conviction* of a person." (Emphasis added). Because the plain language of INDIANA CODE § 9-30-13-0.5 only refers to "convictions," we conclude that the trial court erred in notifying the BMV of Jerden's guilty verdicts that did not result in conviction, as that action was not authorized by statute.

[25] The placement and purpose of INDIANA CODE § 9-30-13-0.5 within the Code support this conclusion. Section 9-30-13-0.5 is located in Chapter 13, which is titled "Miscellaneous Criminal Offenses; Suspension of Driver's License" and concerns the legal consequences of convictions, such as the revocation and suspension of driver's licenses. As guilty verdicts, unlike convictions, do not

have legal consequences, an interpretation of the statute requiring the trial court to notify the BMV of a guilty verdict that does not result in a conviction would not support the purpose of this chapter.

[26] Accordingly, based on the language of INDIANA CODE § 9-30-13-0.5 and its placement and purpose, we conclude that the trial court erred in sending the BMV SR-16 forms for the two of Jerden's guilty verdicts that did not result in convictions. We affirm his convictions but reverse in part and remand with instructions for the trial court to correct its notice to the BMV.

[27] We must note, though, that the reason for this error seems to be the fact that the BMV's SR-16 form does not track the statute. Although the statute requires trial courts to notify the BMV of only "convictions," the BMV's form includes additional options to notify the BMV of "dismissed," "not guilty," "*nolle prosecui* [sic]," "vacated," and "deferred" charges. (App. 89-92). One problem with this format is that, because the form does not distinguish between guilty verdicts and verdicts that result in convictions, there is a potential for guilty verdicts that do not result in judgments of conviction to be entered into BMV records as convictions. This potential is problematic as the contents of the BMV's records act as prima facie evidence for determining the legal consequences of future offenses. *See, e.g.,* I.C. § 9-30-3-15 (stating that the BMV's records that a defendant has a prior conviction are prima facie evidence of such). While we have found here that the trial court should not have notified

the BMV of the two guilty verdicts that did not result in convictions, we would recommend that the BMV also update the SR-16 form to avoid confusion.

[28] Affirmed in part, reversed in part, and remanded with instructions.

Crone, J., and Brown, J., concur.