## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 28 2016, 6:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shandell T. Willingham, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 28, 2016 <br><br> Court of Appeals Case No. 15A05-1507-CR-1029 <br><br> Appeal from the Dearborn Superior Court <br><br> The Honorable Sally A. McLaughlin, Judge <br><br> Trial Court Cause No. 15D02-1502-FB-5 |

**Mathias, Judge.**

[1]     Shandell Willingham ("Willingham") was convicted in Dearborn Superior

Court of Class B felony dealing in a narcotic drug, Level 4 felony dealing in a

narcotic drug, Level 6 felony possession of heroin, and Level 6 felony maintaining a common nuisance. Willingham was also adjudicated a habitual offender. Willingham appeals his convictions and raises three issues, which we consolidate as the following two:

I. Whether sufficient evidence supports his convictions for heroin possession and dealing in heroin; and,

II. Whether Willingham was denied a fair trial due to two instances of prosecutorial misconduct.

[2] We affirm.

## Facts and Procedural History

[3] In October 2014, a confidential informant provided information to Detective Norman Rimstidt ("Detective Rimstidt") that a man named Shawn was dealing heroin in Bright, Indiana. The informant provided Detective Rimstidt with the heroin dealer's cell phone number. The detective obtained a cell phone warrant and learned that the cell phone number was registered to Willingham. Detective Rimstidt also learned that the cell phone had connected to cell phone towers near Bright.

[4] The detective also used Willingham's cell phone number to search Facebook. The number was linked to a Facebook page for "Shawn Will." The page had photos of Willingham and his girlfriend Kelly Kinnet ("Kinnet"). Thereafter, Detective Rimstidt obtained a second search warrant for Willingham's cell phone and an arrest warrant for Willingham.

[5] The warrants were executed in the early morning hours on October 10, 2014, at Kinnet's residence in Bright, Indiana. Law enforcement officers entered the home by using a battering ram to break down the door. Willingham and Kinnet were arrested and removed from the home.

[6] Because he had been sleeping, Willingham was not wearing shoes and asked an officer if he could have his shoes, which were in the living room. While retrieving the shoes, Detective Carl Pieczonka smelled the odor of marijuana and saw what he believed to be a marijuana cigarette and marijuana seeds. Therefore, the detective applied for and received a search warrant for the residence.

[7] During execution of the search warrant, the officers found marijuana, rolling papers, hydrocodone pills, a spoon, a scale, steroids, cash, and syringes. The spoon and the scale, which were later tested by the State Police Lab, contained trace amounts of heroin. Fentanyl was also discovered on the scale. Fentanyl is a cutting agent used in the sale of heroin.

[8] After obtaining Willingham's cell phone, Detective Rimstidt observed one hundred and forty-seven contacts with "doglick" in the names. Detective Rimstidt knew that the phrase "doglick" is a reference to dealing heroin. Also, after searching the data and text messages on Willingham's cell phone, Detective Rimstidt identified four young women who purchased heroin from

Willingham.[1] One of the women later admitted that she sold Willingham the scale that law enforcement officers found during the search of Kinnet's residence. In addition, Kinnet eventually admitted that Willingham gave her heroin and she saw him deal heroin twice in Bright.

[9] On February 27, 2015, Willingham was charged with Class B felony dealing in a narcotic drug (for acts occurring between March 1 and June 30, 2014), Level 4 felony dealing in a narcotic drug (for acts occurring between July 1 and October 9, 2014), Level 6 felony possession of heroin, and Level 6 felony maintaining a common nuisance. The State also alleged that Willingham was a habitual offender.

[10] A jury trial commenced on May 12, 2015, and Willingham was convicted as charged. The jury also found that Willingham was a habitual offender. The trial court ordered Willingham to serve an aggregate sentence of forty-five years. Willingham now appeals.

## Sufficient Evidence

[11] Willingham argues that the evidence is insufficient to prove that he possessed heroin and that he was dealing in heroin. When the sufficiency of evidence is challenged, we neither reweigh the evidence nor judge the credibility of

---

[1] Emily Kage, one of the four women who testified against Willingham, was incarcerated and on house arrest for nearly the entire time period that Willingham was charged with dealing in heroin. Tr. p. 758. Kage testified that she and Willingham texted each other about purchasing heroin after her house arrest ended on September 30, 3014, but that she never actually obtained heroin from Willingham. Tr. p. 760.

witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

### A. Possession

First, we address Willingham's argument that the State failed to prove that he possessed heroin. While searching Kinnet's residence, law enforcement officers found a spoon and a scale. These items were tested by the State Police Lab and found to contain trace amounts of heroin. Willingham argues that the State failed to prove that he had intent to possess the heroin because it was not visibly apparent on the scale or spoon, and both he and Kinnet had access to the items.

To prove that Willingham possessed the heroin, the State was required to prove that he knowingly or intentionally possessed an identifiable amount of heroin. *See* Ind. Code § 35-48-4-6; *see also Beeler v. State*, 807 N.E.2d 789, 792 (Ind. Ct. App. 2004) (requiring that the State prove the defendant possessed an identifiable amount of the illegal drug), *trans. denied*.

It is well settled that a possession conviction may rest upon proof of either actual or constructive possession. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). A defendant constructively possesses an item when he has both the capability and the intent to maintain dominion and control over it. *Id*. Proof of a possessory interest in the premises where the item is found satisfies the capability prong, regardless of whether possession of the premises is exclusive. *Gee v. State*, 810 N.E.2d 338, 340-41 (Ind. 2004).

As for the intent prong, if a defendant's possession of the premises is non-exclusive, the inference of intent to maintain dominion and control must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the item and its presence. *Id*. at 341. Recognized "additional circumstances" include: (1) incriminating statements; (2) attempted flight or furtive gestures; (3) a setting that suggests drug manufacturing; (4) the proximity of the item to the defendant; (5) whether the item was found in plain view; and (6) the mingling of the item with other items the defendant owns. *Id*.

Both Kinnet and Willingham lived at the residence in Bright, Indiana from June 2014 to October 2014. Kinnet testified that Willingham gave her heroin and they used it daily. Tr. pp. 438-39. She admitted that the spoon containing the heroin residue that was found in the master bedroom belonged to her. However, she stated that the scale found in the kitchen drawer containing heroin residue belonged to Willingham. Tr. p. 444. The scale also contained fentanyl, which is a diluting agent used in the sale of heroin.

Shay Richardson ("Richardson") testified that she purchased heroin from Willingham and brought her own scales to weigh the heroin she bought. Willingham asked to buy her scales, and she sold them to him for twenty dollars. Tr. p. 668. The scales were new and still in the box. Richardson testified that the scales she sold to Willingham were the same scales that the law enforcement officers found in his home.

This evidence is sufficient to prove that Willingham owned the scales, used them to weigh heroin, and that he constructively possessed the heroin residue found on the scales. Willingham's argument that Richardson's testimony "cannot be trusted" is merely an invitation to reweigh the evidence and credibility of the witnesses, which our court will not do.

### B. Dealing

Next, we consider whether the State presented sufficient evidence that Willingham committed dealing in heroin. *See* I.C. § 35-48-4-1 ("A person who[] knowingly or intentionally . . . delivers . . . a narcotic drug, pure or adulterated, . . . commits dealing in . . . a narcotic drug[.]"). Detective Rimstidt analyzed the data on Willingham's cell phone and found one hundred and forty-seven contacts with "doglick" in the names. The phrase "doglick" is a reference to dealing heroin.

After reviewing the cell phone data and text messages, Detective Rimstidt identified four young women who purchased heroin from Willingham. At trial, three of the four women testified that they purchased heroin from Willlingham.

Tr. pp. 631-32, 707-09, 741, 744-45. Kinnet testified that she saw Willingham selling heroin on at least two occasions. Tr. pp. 463-71.

[21] Finally, law enforcement officers found items in Willingham's home that are indicative of dealing in heroin. These items include the scales, and baggies and cellophane wrappers, which are used in packaging heroin.

[22] In his brief, Willingham challenges the credibility of these witnesses and their ability to remember the events about which they testified. Willingham's argument on appeal is merely a request to reweigh the evidence and credibility of these witnesses, which our court will not do. Under these facts and circumstances, we conclude that the State presented sufficient evidence to prove that Willingham committed dealing in heroin.

## Prosecutorial Misconduct

[23] Willingham also argues that he was denied a fair trial due to two instances of prosecutorial misconduct. When we review a properly preserved claim of prosecutorial misconduct, "we determine (1) whether misconduct occurred, and if so, (2) 'whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected' otherwise." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (citations omitted).

[24] Willingham concedes that he failed to preserve the claims of prosecutorial misconduct he raises in this appeal.

Our standard of review is different where a claim of prosecutorial misconduct has been procedurally defaulted for failure to properly raise the claim in the trial court, that is, waived for failure to preserve the claim of error. The defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled." In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury— including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible.

*Id.* at 667-68 (internal citations omitted and emphasis in original).

[25] First, Willingham argues that the State engaged in prosecutorial misconduct during closing argument by "emphasizing the dangers inherent in the drug trade" to the jury. Appellant's Br. at 20. Specifically, the prosecutor argued:

> . . . what's this case really, really about. Is it about him or is it about what people like him are doing to our community? How do sixteen (16) year old kids, eighteen (18) year old kids, twenty (20) year old kids get addicted to heroin? It's because people do what he did, what we've proven he did.

Tr. p. 904.

[26] We agree with Willingham that it is "misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt" or "to phrase final argument in a manner calculated to inflame the passions or prejudice of the jury." *See Neville v. State*, 976 N.E.2d 1252, 1264 (Ind. Ct. App. 2012), *trans. denied* (citations omitted). No evidence indicated Willingham sold heroin to a sixteen-year-old, and the prosecutor's argument urged the jury to consider the damage heroin has done to the community. For these reasons, the prosecutor's comments were improper.

[27] However, the statements were fleeting, and the State's closing argument consists primarily of a recitation of the evidence admitted at trial. Moreover, the jury was twice instructed that the attorneys' statements "are not evidence." Appellant's App. pp. 284; 314. For these reasons, and considering the overwhelming evidence of Willingham's guilt admitted at trial and discussed above, we cannot conclude that the prosecutor's misconduct had such an undeniable and substantial effect on the jury's decision that Willingham was denied a fair trial. *See e.g. Jerden v. State*, 37 N.E.3d 494, 500 (Ind. Ct. App. 2015) (citing *Coleman v. State*, 750 N.E.2d 370, 375 (Ind. 2001) ("Where there is

overwhelming independent evidence of a defendant's guilt, error made by a prosecutor during the closing argument is harmless.")).

[28] Finally, Willingham argues that the State engaged in prosecutorial misconduct by eliciting testimony from State Trooper Joe Livers ("Trooper Livers") concerning the manner in which the arrest warrant was executed. Specifically, a SWAT team assisted in executing the warrant in the early morning hours. Trooper Livers testified that a battering ram was used to knock down Kinnet's front door, and then the officers used a flash bang explosive inside the residence as a distraction device. The State also elicited testimony that SWAT teams are "typically requested to come out and serve high risk warrants, um, active shooter situations, anybody with a gun, um pretty high risk stuff." Tr. pp. 315-16.

[29] We agree with Willingham that the evidence of the extreme measures taken to execute the arrest warrant, and particularly why law enforcement officers generally use such methods, was not relevant to whether he possessed heroin and was dealing in heroin.[2] However, in the context of the trial, the evidence admitted concerning execution of the arrest warrant was fleeting. From the evidence admitted at trial, the jury could also logically infer that Willingham was not dangerous and he was compliant with the officers who executed the

---

[2] The State argues that Willingham's counsel "first informed the jury that a flash bang device was used during execution of the first search warrant[.]" Appellee's Br. at 13. However, in its opening statement, the State told the jury that Trooper Livers would testify that a flash bang device was used "to provide a distraction in the residence in order to affect a safe arrest." Tr. p. 266.

arrest warrant. Finally, as we noted above, the State presented substantial evidence of Willingham's guilt. For all of these reasons, we conclude that Willingham has not established that the alleged error was so prejudicial that Willingham was denied a fair trial.

## Conclusion

[30] The State presented sufficient evidence to prove that Willingham possessed heroin and committed dealing in heroin. Although prosecutorial misconduct occurred during trial, Willingham has not established that the error was so prejudicial that he was denied a fair trial.

[31] Affirmed.

Kirsch, J., and Brown, J., concur.