## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 09 2020, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin Leffler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

July 9, 2020

Court of Appeals Case No.
19A-CR-2939

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1806-F1-19158

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Justin Leffler was found guilty of two counts of child molesting, a Level 1 and a Level 4 felony, and not guilty of three additional counts of child molesting, all Level 4 felonies. The trial court entered judgment of conviction on the guilty verdicts and sentenced Leffler to a total of forty-two years at the Indiana Department of Correction. Leffler appeals his convictions, raising one issue for our review: whether the State committed prosecutorial misconduct amounting to fundamental error during its closing argument. Concluding there was no error, but if there was, it was not fundamental, we affirm.

# Facts and Procedural History

[2] In October of 2017, thirty-three-year-old Leffler lived with Tianna Doty and her daughter, J.M., who was seven or eight, and her son, D.M., who was five or six. On March 9, 2018, Leffler was arrested on charges unrelated to the present case. On March 12, Siara Cox, a family case manager from the Indiana Department of Child Services ("DCS"), did a general safety evaluation of the Doty family because of those charges. In conducting such an evaluation, Cox asks questions related to "body safety, drugs, alcohol, all things related to any kind of safety." Transcript of Evidence, Volume III at 4. When she asked J.M. body safety questions, J.M. denied that she had ever been touched inappropriately. Leffler did not return to the home after his arrest.

[3]     Approximately one week later, Doty called both Cox and the Indianapolis Metropolitan Police Department and reported that J.M. claimed Leffler had molested her.  Two police officers came to the apartment and took a report.  The case was referred to a child abuse detective who requested a forensic interview.  On March 21, Jill Carr of the Child Advocacy Center conducted a forensic interview of J.M. during which J.M. said Leffler had molested her.  No details of the police report or the forensic interview were revealed other than that J.M. said Leffler molested her.

[4]     At trial, J.M. described several occasions on which Leffler touched her.  She recalled that on Halloween night, Leffler "slept with" her on the couch.  Tr., Vol. II at 142.  She was laying on her side and Leffler was laying behind her, also on his side, both facing the same direction.  Leffler did not touch her, but she felt uncomfortable in that situation.  Approximately one week after Halloween, Leffler was in J.M.'s bed with her at night and touched her skin-to-skin on her "front private" with his "front private."  *Id.* at 144.  On another occasion when Leffler was in J.M.'s bed with her at night, he touched her "back private" with his "front private."  *Id.* at 147.[1]  Another time, J.M. and Leffler were laying in a blanket fort they had made in the living room and J.M. saw Leffler's penis and he touched J.M.'s "front private" with it.  *Id.* at 149.  On a different night when they were sleeping in J.M.'s bedroom, Leffler licked his

---

[1] Through questioning by the State, J.M. clarified that her "front private" was her vagina, her "back private" was her buttocks, and Leffler's "front private" was his penis.  *Id.* at 144-45, 147.

finger and touched J.M.'s "front private" and chest. *Id.* at 151. That same night, Leffler again touched J.M.'s "back private" with his "front private." *Id.* at 152. And on one occasion, Leffler asked J.M. to touch his "front private" with her mouth, which she did even though she did not want to. *Id.* at 153. Every time, J.M. felt uncomfortable, and every time, Leffler told her that something would happen to her mom if she told. She did not tell anyone, including the DCS family case manager, what was happening because she was "scared and anxious." *Id.* at 154. After it was clear to J.M. that Leffler would not be returning to the home, she felt more comfortable and told her mom, who immediately called the police.

[5] Stephany Knight, a close friend of Doty's, had been living with Doty and her children but moved out when Leffler moved in. She still visited and would occasionally stay overnight at the apartment even after moving out, however. At first, Knight believed Leffler was trying to be a good role model, but she became concerned when she noticed that Leffler was "a little too touchy-feely" with J.M. and favored her over her brother. *Id.* at 198. Knight was at the apartment Halloween night and saw Leffler and J.M. on the couch together. She thought they "were laying more like a couple than someone looking out for someone's child." *Id.* at 196. Knight never witnessed any inappropriate touching, but she did witness Leffler and J.M. come into the living room together from J.M.'s bedroom upon waking one morning.

[6] The State initially charged Leffler with one count of child molesting as a Level 1 felony and two counts of child molesting as Level 4 felonies. The information

was later amended to add two additional counts of child molesting as Level 4 felonies. Although the information itself is worded vaguely as to which allegations support which count,[2] during its closing argument, the State explained that Count One, the Level 1 felony, was based on the incident where Leffler made J.M. touch his penis with her mouth. Counts Two through Five, the Level 4 felonies, were based on, sequentially, Leffler touching J.M.'s vagina with his penis shortly after Halloween; Leffler touching J.M.'s buttocks with his penis; Leffler touching J.M.'s vagina with his penis when they were in the blanket fort; and Leffler licking his finger and touching J.M.'s vagina. *See* Tr., Vol. III at 17-20; *see also* Appellant's App., Vol. II at 137-41 (verdict forms requiring specific findings as to each count).

[7] At Leffler's jury trial,[3] in a lengthy sidebar discussion about whether the defense had opened the door to the State eliciting evidence about coaching, counter-intuitive victim behavior, and child sexual abuse accommodation syndrome, Leffler's counsel summarized his defense as "essentially that [J.M.]'s testimony evolved over time, not because she was coached on what to say but because she was improperly questioned by multiple people." Tr., Vol. II at 210. The defense reiterated this theory during its closing argument, challenging J.M.'s credibility by noting that her description of the molestations had "evolved,

---

[2] The information alleges Leffler engaged in "fondling or touching" with respect to all Level 4 felonies. Appellant's Appendix, Volume II at 55.

[3] Doty passed away shortly before trial.

changed over time" as she "had the opportunity to discuss her story with adults over the last two and a half years[; a]nd when she gave her story to those adults, they provided her with positive reinforcement[.]" Tr., Vol. III at 24. In rebuttal, the State argued:

> Her mom called the police. The officers come out and they ask enough details to know what they're looking for. . . . And then . . . [an officer] pages the detective, and [J.M.] comes in for a forensic interview *where she has said from day one it happened multiple times, that he did it and that he put his penis in her mouth and touched her over and over and over.* And this evolution is adding details.

*Id.* at 28-29 (emphasis added).[4]

[8] The jury found Leffler guilty of Count One, child molesting as a Level 1 felony based on Leffler putting his penis in J.M.'s mouth, and Count Five, child molesting as a Level 4 felony based on Leffler licking his finger and touching J.M.'s vagina. The jury found him not guilty of the remaining counts. Leffler now appeals his convictions.

# Discussion and Decision

---

[4] Although the entire case is based upon this statement during the State's rebuttal argument, instead of a clear, up front presentation of the statement in the Statement of Facts or at the outset of the Argument, both parties bury the actual statement at issue in the Argument section.

# I. Standard of Review

Leffler argues the State committed prosecutorial misconduct during its closing argument when it told the jury a detail that was not in evidence; that is, "that J.M. had disclosed the most important detail of the most serious charge of all 'from day one[.]'" Brief of Appellant at 16.

As our supreme court has explained,

> [i]n reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by *the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct.

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (quotations and citations omitted).

To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial. *Gridley v. State*, 121 N.E.3d 1071, 1078 (Ind. Ct. App. 2019), *trans. denied*. Failure to comply with these requirements forfeits a prosecutorial misconduct claim. *Delarosa v. State*, 938 N.E.2d 690, 696 (Ind. 2010). Leffler concedes he did not properly preserve his

claim of prosecutorial misconduct for appeal because he did not object during the State's rebuttal argument. *See* Br. of Appellant at 15. Thus, to prevail on appeal, Leffler must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. *Ferree v. State*, 124 N.E.3d 109, 114 (Ind. Ct. App. 2019), *trans. denied*.

[12] Fundamental error is an extremely narrow exception to waiver, and a defendant faces the heavy burden of demonstrating that the alleged error is so prejudicial to his rights that it rendered a fair trial impossible. *Jerden v. State*, 37 N.E.3d 494, 498 (Ind. Ct. App. 2015).

> [T]o establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled.

*Ryan*, 9 N.E.3d at 668 (citations and footnote omitted). To determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible, we look at the alleged misconduct in the context of all that happened and all relevant information given to the jury— including evidence admitted at trial, closing arguments, and jury instructions.

*Jerden*, 37 N.E.3d at 498.  Review for fundamental error is not intended to grant the defendant a second bite at the apple; it is meant to permit appellate courts "to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred[.]" *Ryan*, 9 N.E.3d at 668.

## II.  Closing Argument

[13]  Leffler correctly notes that because there were no corroborating witnesses, the State's case rested on J.M.'s testimony about the acts of molestation and therefore on her credibility.  *See* Br. of Appellant at 12.  He couches his argument in terms of the State's closing argument impermissibly encroaching on the jury's right to determine the credibility of witnesses.  "[T]he jury is the sole judge of a witness's credibility." *Kemper v. State*, 35 N.E.3d 306, 310 (Ind. Ct. App. 2015), *trans. denied*.  Therefore, the prosecutor may not state his or her personal opinion of the credibility of a witness during trial.  *Thomas v. State*, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012), *trans. denied*.  A prosecutor may comment on witness credibility "if the assertions are based on reasons *arising from the evidence* presented in the trial[,]" however.  *Id.* (emphasis added); *see also* Ind. Professional Conduct Rule 3.4(e) (stating a lawyer shall not allude to any matter "that will not be supported by admissible evidence [or] assert personal knowledge of facts in issue[.]").

[14]  Leffler interprets the State's comment during its rebuttal to mean that "J.M. specifically accused Leffler of putting his penis in her mouth 'from day one[,]'" and argues that the statement was unsupported by the evidence from trial

because the content of J.M.'s pretrial statements was not admitted. Br. of Appellant at 15. We do not interpret the comment so narrowly. In considering the propriety of a particular statement, we consider it in the context of the argument as whole. *Hand v. State*, 863 N.E.2d 386, 394 (Ind. Ct. App. 2007). The challenged statement does reference the specific allegation that Leffler put his penis in J.M.'s mouth, and there was no evidence that J.M. specifically disclosed that act to her mom or to police on the day she first disclosed the molestation or to Carr several days later. But considering the oral sex allegation in the larger context of the entire statement—"he put his penis in her mouth *and* touched her over and over"—and the State's entire closing and rebuttal arguments, the State was not necessarily saying J.M. had disclosed that particular allegation on "day one," or even that she had disclosed every instance of molestation on "day one." Rather, the statement could be interpreted to convey that she had consistently said from the time she finally felt safe to disclose the molestation that Leffler had molested her multiple times ("she has said from day one it happened multiple times") and then disclosed additional *details* of the molestations throughout the process as she was questioned and interviewed (*"*that he put his penis in her mouth and touched her over and over. And this evolution is adding details."). Tr., Vol. III at 29; *see also id.* at 22 (State arguing that "when she did first disclose to mom and then to [the police] and then to Jill Carr, her brain had been repressing those memories for months. So you got more detail today."); at 22-23 (arguing kids "tell on their own time. And they test the waters first, so they give some details and they see an adult's reaction and then they feel safe telling more."); and at

27-28 (State arguing on rebuttal that "[t]hese aren't inconsistencies. . . . Those are details being added, not inconsistencies."). Thus, as the evidence would support an assertion that J.M. consistently disclosed multiple instances of abuse, and as the prosecutor is allowed to comment on witness credibility based on evidence presented at trial, *see Thomas*, 965 N.E.2d at 77, we conclude the prosecutor did not commit misconduct in making this statement.

[15] However, even if we interpret the statement as Leffler does and assume the prosecutor committed misconduct by making an improper statement during rebuttal, we conclude this was not fundamental error. The challenged statement was brief, it was immediately followed by an acknowledgement that the details of J.M.'s allegations had evolved since day one, and the trial court gave the jury the following instruction:

> The unsworn statements or comments of counsel . . . should not be considered as evidence in the case. It is your duty to determine the facts from the testimony and evidence admitted by the Court and given in your presence and you should disregard any and all [other] information[.]

Appellant's App., Vol. II at 127. The trial court's jury instructions are presumed to cure any improper statements made during trial. *Guy v. State*, 755 N.E.2d 248, 258 (Ind. Ct. App. 2001), *trans. denied*.

[16] Fundamental error "must be of such magnitude to persuade the reviewing court that the defendant could not possibly have received a fair trial or that the verdict is clearly wrong or of such dubious validity that justice cannot permit it to

stand." *Id.* We do not believe the prosecutor's statement, even if improper, made it impossible for Leffler to receive a fair trial. *See Wright v. State*, 690 N.E.2d 1098, 1112 (Ind. 1997) (providing that the prosecutor's statement, while improper, was fleeting, and when considered together with the trial court's instructions that statements of counsel are not evidence and that it is the duty of the jury to decide a case only on evidence given in court, did not place defendant in a position of grave peril). J.M testified at Leffler's trial about the instances of molestation. Although the jury found Leffler guilty of the count related to Leffler putting his penis in J.M.'s mouth, it also found him not guilty of three additional charges of child molesting, indicating it carefully parsed the evidence and considered the proof relevant to each charge. We are not persuaded that the verdicts are clearly wrong or of dubious validity and therefore, Leffler has failed to show fundamental error.

# Conclusion

[17] Leffler has failed to prove prosecutorial misconduct, and even if we assume there was misconduct, he has failed to prove that any such misconduct constituted fundamental error. Accordingly, Leffler's convictions for child molesting are affirmed.

[18] Affirmed.

May, J., and Vaidik, J., concur.