**Gary D. GEE, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S05–0406–CR–271.

Supreme Court of Indiana.

June 17, 2004.

---

Teresa D. Harper, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS, NO. 49A05–0109–CR–413.

RUCKER, Justice.

Gary D. Gee was convicted of several drug related offenses as a result of contraband found in a house he shared with a relative. Because the evidence was not sufficient to demonstrate that Gee knew of the nature of the contraband and its pres-

ence in the house, we reverse his conviction.

### Facts and Procedural History

In July 1999, an anonymous tip led officers of the Indianapolis Police Department ("IPD") to suspect that drug activity was occurring at a home located on Mutz Court in Indianapolis. Prompted by the tip, IPD officers kept the house under surveillance periodically for two weeks. However they saw no one entering or exiting the residence. Sometime in August 1999, officers confiscated a bag of trash sitting on the curb in front of the Mutz Court residence. Several items were discovered in the trash, some of which were covered with a white powdery substance later identified as cocaine. Officers also discovered mail addressed to a person by the name of "Lewis R. Gee." The record later revealed that Lewis R. Gee is the cousin of Gary D. Gee.[1] The record also revealed that both men leased the residence, but Gee stayed there only occasionally. In any event, as a result of the items found in the discarded trash, IPD officers obtained a warrant to search the house. When the warrant was executed, only two small children were present.

Searching the home officers seized among other things over 126 grams of cocaine and cocaine residue, over 273 grams of marijuana, $5,000 in cash, and a set of digital scales. Because the location of the confiscated items, along with the circumstances of their discovery, is critical to our analysis we discuss these matters in greater detail below. For the moment, however, suffice it to say that Gee was charged with dealing in cocaine, as a Class A felony; possession of cocaine, as a Class C felony; possession of cocaine and a fire-arm, a Class C felony; dealing in marijuana, as a Class D felony; and possession of marijuana, as a Class D felony. Except for the possession of cocaine and a firearm charge, for which he was found not guilty, after a jury trial Gee was convicted as charged and ultimately sentenced to a total executed term of twenty years' imprisonment. On review, Gee challenged the sufficiency of the evidence. In a Memorandum Decision the Court of Appeals affirmed the judgment of the trial court. See Gee v. State, No. 49A05–0109–CR–413, 774 N.E.2d 608 (Ind.Ct.App. Sept.3, 2002). We now grant transfer and reverse the trial court's judgment.

### Discussion

■ Actual possession of contraband occurs when a person has direct physical control over the item. Walker v. State, 631 N.E.2d 1, 2 (Ind.Ct.App.1994). In this case Gee was not present when police seized the drugs and other contraband and thus he was not found to be in actual possession of drugs. As a result, the State prosecuted its case against Gee under the theory of constructive possession. A defendant is in the constructive possession of drugs when the State shows that the defendant has both (i) the intent to maintain dominion and control over the drugs and (ii) the capability to maintain dominion and control over the drugs. Lampkins v. State, 682 N.E.2d 1268, 1275 (Ind.1997), on reh'g, 685 N.E.2d 698 (Ind.1997). The proof of a possessory interest in the premises on which illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question. Davenport v. State, 464 N.E.2d 1302, 1307 (Ind.1984). In essence the law infers that the party in possession of the

---

1. Gary D. Gee and Lewis R. Gee were scheduled to be tried as codefendants in this case. However, Lewis R. Gee did not appear for trial and was tried in absentia. In any event he is not a party to this appeal. To avoid confusion we refer to Lewis R. Gee as "Lewis," and we refer to the defendant Gary D. Gee as "Gee."

premises is capable of exercising dominion and control over all items on the premises. *See id.; Martin v. State,* 175 Ind.App. 503, 372 N.E.2d 1194, 1197 (1978) ("[A] house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee."). And this is so whether possession of the premises is exclusive or not.

■ However, the law takes a different view when applying the intent prong of constructive possession. When a defendant's possession of the premises on which drugs are found is not exclusive, then the inference of intent to maintain dominion and control over the drugs "must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence." *Lampkins,* 682 N.E.2d at 1275. The "additional circumstances" have been shown by various means: (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Henderson v. State,* 715 N.E.2d 833, 836 (Ind.1999).

■ In this case Gee does not contest that he held a possessory interest in the Mutz Court residence. Thus he does not challenge the inference that he had the capability to maintain dominion and control of the drugs found in the home. He argues however that there were no additional circumstances demonstrating that he had knowledge of the drugs or their presence. The Court of Appeals disagreed noting that the drugs were located in a common area of the home that Gee shared with his cousin Lewis and that Gee's personal effects were in close proximity to the drugs. The court concluded that "[c]ontraband being in plain view and in close proximity to other items associated with the defendant are two 'additional circumstances' by which constructive possession of contraband may be proven where the defendant's control over the premises on which the contraband is found is non-exclusive." Slip op. at 4–5. We have no quarrel with this general proposition of law. However we disagree with our colleagues that the proposition is applicable to the facts of this case.

### Contraband in plain view?

■ We first observe that the plain view doctrine is not actually at issue in this case. An exception to the warrant requirement, the plain view doctrine is applicable when police are not searching for evidence against the accused, but nonetheless inadvertently come across incriminating items. *Warner v. State,* 773 N.E.2d 239, 245 (Ind.2002); *see also Sloane v. State,* 686 N.E.2d 1287, 1291 (Ind.Ct.App. 1997) (noting that the plain view doctrine "stands for the premise that objects which are in plain view of an officer who rightfully occupies a particular location can be seized without a warrant and are admissible as evidence"), *trans. denied.* Here, pursuant to a warrant, officers seized the very contraband for which they were specifically searching. And at trial there was no challenge made to the contraband's admissibility. In essence an exception to the warrant requirement is not at issue here. Rather the term "plain view" in the context of this case is used in a more generic sense, namely: the contraband is in a location where it can be "plainly viewed" and "the incriminating character of the evidence is immediately apparent." *See*

*Houser v. State,* 678 N.E.2d 95, 101 (Ind. 1997).

The record shows that the drugs in this case were found in the basement laundry room of the Mutz Court residence in "cabinets and cans and closed stuff." R. at 117, 159. More specifically Jeffrey Krider, one of the officers on the scene who testified at trial, said that in conducting the search he first went to the "laundry room area" to a "corner cabinet." *Id.* at 74. The following exchange then occurred:

[Deputy Prosecutor]: And did you open the cabinet door?

[Officer Krider]: Yes.

[Deputy Prosecutor]: What did you see when you opened the cabinet door?

[Officer Krider]: There was a cigar box, a couple of bags of baggies, I think a can of tar remover.

[Deputy Prosecutor]: Did you take anything out?

[Officer Krider]: The cigar box.

[Deputy Prosecutor]: Did you open it?

[Officer Krider]: Yes I did.

[Deputy Prosecutor]: And what did you observe inside of it?

[Officer Krider]: There was a baggie containing a white powdery substance.

[Deputy Prosecutor]: What did you believe that to be at the time?

[Officer Krider]: Based on my training and experience as a Police Officer Cocaine.

*Id.* at 75. The other on-the-scene officer testifying at trial, Sgt. Brian Roach, also began his search "[i]n the laundry room, which is just off the basement." *Id.* at 159. Sgt. Roach testified that Officer Krider pointed out to him the cabinet and cigar box which he removed. The following relevant exchange occurred:

[Deputy Prosecutor]: Once you removed the cigar box what else did you find?

[Sgt. Roach]: It was a tin can, maybe a fifty can, [that] you see during Christmas season, it was underneath the cigar box, I opened it up and found digital scales then there was also a sandwich bag, and inside the sandwich bag was a yellowish rocklike substance which I thought was Crack Cocaine.

*Id.* at 162–63. Sgt. Roach also testified that the scales were concealed in a "black folded leather case." *Id.* After Sgt. Roach testified about his search of the cabinets, the following exchange occurred:

[Deputy Prosecutor]: All right where did you move to next?

[Sgt. Roach]: I don't know specifically next, but eventually I found my way to below the cabinets, there were some five gallon buckets like paint buckets stacked, the one on top was either red or orange, I opened it up and inside it was a larger bag of what I believed to be marijuana a green leafy substance.

*Id.* at 165–66. When asked what else he found in the basement laundry room, Sgt. Roach testified, "[O]n top of those same cabinets was a gray plastic bag upon opening it, there were a glass jar, measuring cup, a spoon and a pots [sic]. They all had a white powdery residue. Those items are commonly used to turn powdered cocaine or cocaine hydrochloride into Crack cocaine, or Cocaine base." *Id.* at 168.

The record makes clear that none of the drugs and paraphernalia seized by the officers was in a location where it could be "plainly viewed." With the exception of the cookware with cocaine residue, all items were hidden out of view inside of closed containers. And even with respect to the cookware, it was found inside a bag which an officer opened to determine the contents. Further, the incriminating character of the contraband was not immediately apparent. *See Lampkins,* 685 N.E.2d at 700 (noting that the principle of

plain view is invoked "only where the incriminating character of the contraband is immediately apparent" and declaring that a "closed Tylenol bottle does not constitute contraband in plain view").

We also observe that the "plain view" additional circumstance is generally applicable where the defendant is physically present at or near the location where the contraband is found. *See, e.g., id.* at 699–700 (defendant in automobile where contraband found); *Person v. State,* 764 N.E.2d 743, 751 (Ind.Ct.App.2002) (defendant exited bedroom where gun was found), *trans. denied; Conrad v. State,* 747 N.E.2d 575, 583 (Ind.Ct.App.2001) (defendant asleep in bedroom where contraband found), *trans. denied; Tardy v. State,* 728 N.E.2d 904, 908 (Ind.Ct.App.2000) (defendant found in bathroom where cocaine was located behind the toilet), *trans. not sought; contra Ladd v. State,* 710 N.E.2d 188, 191 (Ind.Ct.App.1999) (defendant not present when drugs found in his home but holding that drugs were in plain view and in close proximity to items owned by defendant), *trans. not sought.*

When contraband is found in plain view on premises that are not possessed exclusively by the defendant and the defendant is nowhere around we fail to see how, without more, an inference can be drawn that the defendant knows of the presence of drugs. Indeed we have said that the plain view additional circumstance means "within the defendant's plain view." *Henderson,* 715 N.E.2d at 836. Here, not only were the contraband items not plainly viewable even by the officers conducting the search, but also Gee was not present when the items were seized. In sum, evidence of the plain view additional circumstance was insufficient to show that Gee had the intent to maintain dominion and control over the contraband.

## Contraband in close proximity to other items associated with the defendant?

As an additional circumstance supporting the claim that Gee was aware of the presence and character of the seized contraband, the State relies on supposed trial court testimony that several personal effects belonging to Gee were found in close proximity to the drugs. It is true that the mingling of the contraband with other items owned by the defendant is an additional circumstance demonstrating the probability that the defendant knew of the presence and character of the controlled substance. *Id.; see also Allen v. State,* 798 N.E.2d 490, 501–02 (Ind.Ct.App.2003) (noting that the "[l]ocation of the drugs in close proximity to items owned by the defendant" is an additional circumstance tending to buttress an inference that the defendant intended to maintain dominion and control over the contraband), *trans. not sought.*

The record shows that several receipts and invoices from various businesses, all of which bore Gee's name, were found in a drawer in the kitchen of the house. R. at 79–85. However, no drugs or drug paraphernalia were discovered in the kitchen. Other personal items belonging to Gee, a social security card, and a birth certificate, were located in an upstairs bedroom that Gee occupied, but no drugs or drug paraphernalia were found anywhere in the vicinity. By contrast in a bedroom occupied by Lewis, officers found a lock box under a bed containing $5000 in $20 bills. *Id.* at 89–90, 92–93. According to Officer Krider, this particular dollar denomination is common in illegal drug sales. *Id.* at 120. The record shows that the only personal items found near the contraband were several photographs in which Gee appeared with his cousin Lewis along with other people. The photographs were located "in the cabi-

net underneath the shelf." *Id.* at 186. However when asked the question, "You don't know who own [sic] those pictures, whether they were [Lewis'] pictures or [Gee's] pictures, you don't know do you?" Officer Krider answered, "[C]orrect." *Id.* at 120.

It is clear that the photographs are the only items that could plausibly qualify as having been mingled with the confiscated drugs. However absent any evidence of who owned the photographs we cannot say the location of the drugs was somehow associated with Gee's personal property. *See, e.g., Davenport,* 464 N.E.2d at 1307 (Ind.1984) (describing that in a house occupied by the defendant and his girlfriend, drugs were found in a dresser drawer along with a man's watch and several syringes in the only bedroom in the residence).

**Any other "additional circumstances"?**

■ The listed additional circumstances identified in *Henderson* are not exclusive. Rather, the State is required to show that whatever factor or set of factors it relies upon in support of the intent prong of constructive possession, those factors or set of factors must demonstrate the probability that the defendant was aware of the presence of the contraband and its illegal character. In this case the State argues that the drugs were found in "a common area, the cabinets of the laundry [room]" to support its view that Gee had constructive possession of the cocaine and marijuana. Br. of Appellee at 6. "[T]he place where the contraband is found" has been identified as an additional circumstance from which a trier of fact could conclude that the defendant had the requisite intent in a non-exclusive constructive possession case. *Carnes v. State,* 480 N.E.2d 581, 586 (Ind.Ct.App.1985), *trans. not sought.* In *Carnes* police discovered a large bag of marijuana in the kitchen refrigerator. The court observed, "Human experience tells us that adult members of a household are in and out [of] a kitchen refrigerator as a matter of course.... [I]t is factually unlikely that a large container of marijuana located in a kitchen refrigerator in the residence of adults would go unnoticed by those adults." *Id.* at 587. Here, by contrast, the drugs were found in a basement laundry room. Unlike a kitchen, which in many households serves as a gathering place for social and familial interaction, a laundry room is usually frequented only by whomever has the task of washing clothes. Similarly, unlike a refrigerator nothing in human experience tells us that anyone in particular, as a matter of course, is in and out of laundry room cabinets. In essence, although the place where the contraband is found may serve as an additional circumstance to support the inference that a defendant knew of the presence of the contraband and its illegal character, the location of the contraband in this case supports no such inference. In sum, the evidence was not sufficient to show that Gee was in constructive possession of the marijuana and cocaine found in the Mutz Court residence. We therefore reverse his convictions.

**Conclusion**

The judgment of the trial court is reversed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.