**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 08 2014, 9:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
Marion County Public Defender
Indianapolis, Indiana

**JAY RODIA**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JESSICA LEWIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1401-CR-15 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable Michael S. Jensen, Magistrate
Cause No. 49G20-1209-FA-65024

**September 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Jessica Lewis appeals her conviction following a bench trial for possession of more than three grams of cocaine,[1] a Class C felony, contending that there was insufficient evidence to support her conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 18, 2012,[2] narcotics officers with the Indianapolis Metropolitan Police Department ("IMPD"), including Detective Craig McElfresh and Detective Anthony McLemore, executed a search warrant at 3026 East Michigan Street, in Indianapolis, Indiana.[3] To gain entry to the home, the police had to break down the front door and kill an aggressive dog. The house was a small, two-bedroom, one-story building. Once inside, the officers encountered only one person, a woman who was later identified as Lewis, standing in one of the bedrooms that was open to the living room. Detective McElfresh, who could see Lewis the whole time, noted that the bedroom contained "[a] bed or a couch or like a futon," and there were "clothes scattered on the floor." *Tr.* at 27.

Detective McElfresh read Lewis her *Miranda* rights, which Lewis stated she

---

[1] *See* Ind. Code § 35-48-4-6. We note that, effective July 1, 2014, a new version of this criminal statute was enacted. Because Lewis committed her crime prior to July 1, 2014, we will apply the statute in effect at the time she committed her crime.

[2] In her brief, Lewis contends that officers executed the warrant on September 12, 2012, *Appellant's Br.* at 3; however, the search warrant documents support the date of September 18, 2012. *State's Ex.* 7 at 29.

[3] The search warrant resulted from an investigation that began when a confidential informant ("CI") advised the IMPD that an individual, described as a black male, 5'9" tall, 270 pounds, with a light complexion, was selling cocaine from the East Michigan Street house. *State's Ex.* 7 at 22. Prior to requesting the warrant, the police conducted three controlled buys, where the CI went to the East Michigan Street residence and purchased cocaine from the same black male. *Id.* at 23.

2

understood. *Id*. at 27-28. Detective McElfresh then questioned Lewis "about the circumstances of the house." *Id*. at 28. Lewis "stated that she did live there. She stated that she was only there to gather up clothes for her child." *Id*. Lewis also stated that she did not know anyone that matched the description of the male described in the search warrant.

Meanwhile, Detective McLemore searched the kitchen and found, inside a cabinet and on top of baby food and formula, a clear plastic baggie containing what appeared to be cocaine. Once tested, the substance was positively identified as roughly 10.27 grams of cocaine. In addition to the baggie of cocaine, officers also seized a firearm and a digital scale. The digital scale, which had residue on it, was in plain view on the kitchen counter and located just under the cabinet in which the cocaine had been found. When asked about the cocaine, Lewis stated that it was not hers and claimed that she did not know who owned the drugs.

The State charged Lewis with Count I, dealing in cocaine as a Class A felony; Count II, possession of cocaine in an amount greater than three grams as a Class C felony; and Count III, possession of cocaine while also in possession of a firearm as a Class C felony. On May 29, 2013, Lewis filed a waiver of jury trial, which the trial court granted after a hearing on the matter. That same day, the State filed a motion to dismiss Counts I and III. On September 11, 2013, a bench trial was held on the remaining count of Class C felony possession of cocaine in an amount greater than three grams, and the trial court found Lewis guilty. Lewis was sentenced to three years, with 48 days executed and 1,047 days suspended, with two years of non-reporting probation. Lewis was given credit for 24 days

served and 24 days earned credit time.  Lewis now appeals.

## DISCUSSION AND DECISION

Lewis argues that there was insufficient evidence to convict her of Class C felony possession of cocaine because the State failed to prove that she constructively possessed the cocaine found in the house.  Specifically, she contends that her conviction must be reversed where there was insufficient evidence of her intent to maintain control over the cocaine under circumstances where she did not have exclusive possession of the premises[4] and the State failed to prove her knowledge of the presence and character of the contraband. *Appellant's Br*. at 7.

When considering a challenge to the sufficiency of evidence to support a conviction, we respect the finder of fact's exclusive province to weigh conflicting evidence and therefore neither reweigh the evidence nor judge witness credibility.  *McHenry v. State,* 820 N.E.2d 124, 126 (Ind. 2005).  We consider only the probative evidence and reasonable inferences supporting the verdict, and "must affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'"  *Id.* (quoting *Tobar v. State,* 740 N.E.2d 109, 111-12 (Ind. 2000)).  Our review is governed by this same standard when a conviction is based on circumstantial evidence.  *Gaerte v. State*, 808 N.E.2d 164, 166 (Ind. Ct. App. 2004) (when conviction is based on circumstantial evidence, we will not disturb verdict if finder of fact could reasonably infer from evidence that defendant is guilty

---

[4] Lewis argues that the search warrant's focus on a black male, who was allegedly dealing cocaine out of the East Michigan Street home, supported her contention that she did not have exclusive possession of the home. *Appellant's Br*. at 7.

4

beyond reasonable doubt), *trans. denied*.  The circumstantial evidence need not overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.  *Id.*

To prove possession of cocaine as a Class C felony, the State had to present sufficient evidence that the defendant, "without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally" possessed cocaine with a weight of three grams or more.  *See* Ind. Code § 35-48-4-6.  Possession may be proved by evidence of actual possession or constructive possession.  *See Richardson v. State*, 856 N.E.2d 1222, 1228 (Ind. Ct. App. 2006) (conviction upheld where court found sufficient circumstantial evidence that defendant was in constructive possession of precursors), *trans. denied*.

Here, the State argued that Lewis had constructive possession of more than three grams of cocaine.  *Tr.* at 21, 48.  The amount of cocaine is not in dispute; instead, Lewis contends that she did not have constructive possession.

> "In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband."

*Crocker v. State*, 989 N.E.2d 812, 822-23 (Ind. Ct. App. 2013) (citations omitted), *trans. denied*.  Regarding the second element, proof of a possessory interest in the premises on which illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question.  *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004).  In essence, the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises.  *Id.* at 340-41 (citing *Martin v. State,*

175 Ind. App. 503, 507, 372 N.E.2d 1194, 1197 (1978) ("[A] house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee.")). This is true whether possession of the premises is exclusive or not. *Id*. at 341. Here, evidence that Lewis was found alone in the East Michigan Street home and said that she lived there was sufficient to prove the second element—the capability to maintain dominion and control over the cocaine.

Lewis, however, focuses on the first element—the element of intent.

> "To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband." "'This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's *knowledge* of the presence of the contraband.'"

*Crocker*, 989 N.E.2d at 822-23 (emphasis added) (citations omitted). The "additional circumstances" have been shown by various means:

> (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Gee*, 810 N.E.2d at 341 (citing *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999)).

Once inside the home, Detective McElfresh encountered Lewis near a bedroom, which had clothes scattered all over the floor. Detective McElfresh read Lewis the search warrant and *Miranda* warnings, and when asked if she understood her rights, Lewis said she understood. *Id*. at 27-28. Detective McElfresh then asked Lewis about the black male

6

described in the search warrant, and Lewis told the officers that she did not know what they were talking about. *Id*. at 35.

Lewis stated that she lived in the house, but claimed that she was only there to gather clothes for her child. Detective McElfresh testified that he did not notice any piles of collected clothes, nor did he see any "suitcases or bags or anything that had clothes gathered up." *Id*. at 28. The other officers, who were carrying out the search, notified Detective McElfresh that they had found a digital scale in plain view on the kitchen counter, and in a kitchen cabinet above that, they found a clear baggie containing a white powder that appeared to be cocaine, and was later tested and determined to be 10.27 grams of cocaine. The baggie was sitting on top of baby food and formula. When asked about the cocaine, Lewis said it was not her cocaine, and she did not know "whose it was." *Id*. at 35. At trial, the parties stipulated that the digital scale had cocaine residue on it. *Tr*. at 42.

It is true that Lewis's knowledge of the cocaine cannot be shown by her attempt to flee or because conditions in the home suggested the manufacture of drugs. However, Lewis admitted to living in the house and to having a child, and the clear plastic baggie of cocaine was found in a cabinet located directly over the digital scale and on top of baby food and formula. *Tr*. at 30. It was reasonable for the trial court to infer that Lewis had knowledge of the cocaine, especially in light of the fact that Lewis denied that she knew the black male described in the search warrant, and she made no mention that she shared the home with anyone else who had a child. *Id*. at 34-35. Under these circumstances, we find sufficient evidence to affirm Lewis's conviction. Affirmed.

BAKER, J., and ROBB, J., concur.