## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2016, 10:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gary A. Cook
Peru, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jackie Butler, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 31, 2016 <br><br> Court of Appeals Cause No. 34A04-1512-CR-2238 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable George A. Hopkins, Judge <br><br> Cause No. 34D04-1506-F5-65 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Jackie Butler (Bulter), appeals his conviction and sentence for unlawful possession of a firearm by a serious violent felon, a Level 4 felony.

[2] We affirm and remand with instructions.

## ISSUES

[3] Butler raises three issues on appeal, which we restate as the following:

(1) Whether there was sufficient evidence to support the portion of Butler's conviction for possession of a firearm;

(2) Whether Butler's sentence is inappropriate in light of the nature of the offense and his character; and

(3) Whether the trial court committed a sentencing error on the habitual offender enhancement.

## FACTS AND PROCEDURAL HISTORY

[4] From October 2014, Butler was Jill Wilson's (Wilson) live-in boyfriend. Also living at Wilson's apartment in Kokomo, Indiana, was her adult son, Dominic Wilson (Dominic) and her fifteen-year-old daughter. On June 15, 2015, at approximately 3:45 p.m., Dominic came home from work and he violently banged on the door. Butler let Dominic in and remarked on Dominic's errant conduct. Wilson, who was at home, heard Butler call Dominic "a punk ass bitch," and Dominic called Butler "a bitch." (Transcript p. 131). A scuffle ensued. Wilson pleaded with Dominic not to fight Butler since he had a

pacemaker. When the two stopped fighting, Dominic went upstairs to another apartment to help a friend move out, and Butler went to a neighbor's house down the street. During the fight, Dominic's wallet had fallen on the floor. Dominic had just been paid, and when Wilson peeked through his wallet, she saw that it was empty. After a short while, Dominic returned to Wilson's apartment to retrieve his wallet, but Wilson informed Dominic that the wallet was empty. Dominic then stated, "that bitch ass nigga took my money," and he ran down the street to the neighbor's house to confront Butler. (Tr. p. 131).

[5] When Dominic confronted Butler, Butler denied the allegations. Infuriated by his denials, Dominic returned to his mother's apartment and threw Butler's clothes out of the apartment. Shortly thereafter, Butler returned to Wilson's apartment, and Wilson yelled at him for taking Dominic's money. Annoyed by Wilson's allegations, Butler forced Wilson into the bedroom and threw her on the bed. Butler proceeded to choke Wilson. Because he had a pacemaker, Wilson did not want to kick Butler, and instead wiggled herself out of Butler's hold and slid off the bed. Butler followed Wilson and tried to smother her with a pillow. To free herself, Wilson kicked Butler and escaped from the room. Dominic, who was upstairs in another apartment, heard screams and commotion originating from his apartment. Accompanied by his friend, Dominic opened Wilson's apartment door and realized that Butler had assaulted Wilson. A fight ensued. During the fight, Wilson exited her apartment.

[6] Once outside her apartment, Wilson encountered Sarah Tomlinson (Tomlinson), Dominic's acquaintance. Wilson was coughing, and Tomlinson directed Wilson to get away from her apartment and seek safety in hers. At that moment, Tomlinson and Wilson heard two gunshots, and they both ran to Tomlinson's apartment for safety. As they neared Tomlinson's apartment, they saw Butler running toward them, and according to Tomlinson, Butler was holding a "very small gun." (Tr. p. 168). Tomlinson and Wilson entered Tomlinson's apartment, and thereafter Tomlinson called the police.

[7] Numerous Kokomo Police Department and Howard County Sheriff's Department officers responded to a dispatch of an active shooter at Wilson's apartment complex. The officers knocked on Wilson's apartment door, and a short while later, Butler emerged and was arrested. Afterward, the officers entered Wilson's apartment and conducted a protective sweep and then left. A search warrant to search Wilson's apartment was subsequently obtained, and during the search, the officers found a semiautomatic pistol with a loaded magazine hidden underneath a mattress in the southeast bedroom. They also found an ammunition box with about forty-five bullets. In addition, there was a bullet hole in the door, but the officers were unable to find a fired bullet or casing.

[8] On June 11, 2015, the State filed an Information, charging Butler with Count I, criminal recklessness, a Level 5 felony; Count II, strangulation, a Level 6 felony; and Count III, domestic battery, a Class A misdemeanor. On July 9, 2015, the State added Count IV, unlawful possession of a firearm by a serious

violent felon, a Level 4 felony, and at the same time, the State filed a habitual offender enhancement.

[9]     On October 20 through October 21, 2015, the trial court conducted Butler's jury trial. The trial was split into three phases. The first phase of trial involved all charges except the serious violent felon (SVF) portion of Count IV. At the close of the evidence, the jury acquitted Butler of the criminal recklessness charge and returned guilty verdicts for strangulation, domestic battery, and possession of a firearm. In the second phase, the jury found Butler guilty of unlawful possession of a firearm by a SVF. Finally, in the third phase of Butler's trial, the jury adjudicated Butler as an habitual offender.

[10]    On November 20, 2015, the trial court conducted Butler's sentencing hearing, and at the close of the evidence, the trial court imposed concurrent sentences of one and one-half years for strangulation, one year for domestic battery, and ten years for unlawful possession of a firearm by a SVF. Due to his habitual offender adjudication, Butler's sentence was enhanced by ten years, to be served consecutively to his other ten-year sentence. As such, Butler's aggregate executed term was twenty years. In addition, the trial court ordered Butler's instant sentences to run consecutively with his other sentence in Cause Number 34D04-1507-F4-00080—unlawful possession of a firearm by SVF and resisting law enforcement, where the trial court imposed a five-year sentence.

[11]    Butler now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[12]   Butler asserts that there was insufficient evidence to support actual possession of the firearm in question. When reviewing a challenge to the sufficiency of the evidence, we do not reweigh evidence or judge the credibility of witnesses. *Duncan v. State*, 23 N.E.3d 805, 812 (Ind. Ct. App. 2014), *trans. denied*. Instead, we consider only the evidence and the reasonable inferences supporting the verdict. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Id*. Further, a conviction may be based on circumstantial evidence, and it is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied.*

[13]   The State presented evidence that Butler possessed a firearm. At trial, Tomlinson stated that she and Dominic were friends but no longer talked since Dominic was serving time in prison. Tomlinson testified that on the day in question, she and other residents from her apartment complex were drawn to Wilson's apartment due to an altercation. Tomlinson testified that when she arrived at Wilson's apartment, the back door was wide open and she observed Butler smothering Wilson. When Wilson exited her apartment, Tomlinson directed Wilson to her apartment for safety. Tomlinson further stated that as they were walking to her apartment, they heard gunshots originating from

Wilson's apartment. Both ran to Tomlinson's apartment for safety. However, before going inside, Tomlinson stated that they were met by Butler and he was holding a small gun. Tomlinson indicated that Wilson was not paying attention to Butler, and once inside her apartment, she informed Wilson that Butler was holding a gun. Throughout Butler's jury trial, Tomlinson unequivocally testified that she saw Butler holding a gun and he was about fifteen feet from her. In addition, Tomlinson identified the gun found in Wilson's apartment as the same gun she saw Butler holding.

[14] Butler's contention is that, Tomlinson, the State's only eyewitness, was incredibly dubious in her testimony because (1) Tomlinson was the only person who stated that she saw him with a gun; (2) Tomlinson was in a romantic relationship with Dominic, thus making her testimony biased; and (3) Wilson, who was beside Tomlinson, did not observe him holding a gun.

[15] Under the narrow limits of the incredible dubiosity rule, a court may impinge upon a jury's function to judge the credibility of a witness. *Gray v. State*, 871 N.E.2d 408, 416 (Ind. Ct. App. 2007), *trans. denied*. For testimony to be disregarded based on a finding of incredible dubiosity, it must be inherently contradictory, wholly equivocal, or the result of coercion. *Id*. Moreover, there must also be a complete lack of circumstantial evidence of the defendant's guilt. *Id*. at 417. The rule is rarely applicable. *Id*.

[16] The incredible dubiosity rule applies only if a witness, within her own testimony, contradicts herself. Butler's arguments misapply the incredible

dubiosity rule by speculating about Tomlinson's motive or bias, and the fact that Tomlinson's testimony was contradicted by Wilson, who testified that she did not see Butler with a gun. Notwithstanding his claims, we find that the evidence supporting Butler's possession of a firearm is sufficient to support Butler's guilt.

[17] Possession of a handgun may be established through either actual or constructive possession. *Wallace v. State*, 722 N.E.2d 910, 913 (Ind. Ct. App. 2000). Actual possession occurs when a person has direct physical control over an item. *Id.* Constructive possession occurs when a person has both the intent and the capability to maintain dominion and control over the item. *Id.*

[18] Here, the State presented sufficient evidence beyond a reasonable doubt to establish constructive possession. Constructive possession can be established if the defendant has both the intent and the capability to maintain dominion and control over the item. *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004). The proof of a possessory interest in the premises on which the item is found is adequate to show the capability to maintain dominion and control over the item in question. *Id.* In essence, the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises. *Id.* at 340-41. And this is so whether possession of the premises is exclusive or not. *Id.* Here, we find that, even though Butler shared an apartment with Wilson and her two children, Butler had a possessory interest in the house because he lived there. Butler was capable of maintaining dominion and control over the gun because the gun was recovered from the bedroom he

shared with Wilson. As such, the State established the capability prong of constructive possession.

[19] However, when a defendant's possession of the premises where the item is found is not exclusive, then the inference of intent to maintain dominion and control over the item must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the item and its presence. *Id.* The "additional circumstances" can be shown by various means: (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the item to the defendant, (5) location of the item within the defendant's plain view, and (6) the mingling of the item with other items owned by the defendant. *Id.*

[20] At Butler's jury trial, the State introduced a picture of Wilson's bedroom as Exhibit 2. Wilson testified, "[T]hat's my bedroom, that's my bed and that's the gun that they found." (Tr. p. 161). In addition, Wilson testified that the last time she saw Butler, he was in her bedroom. Also, the jury heard evidence that the gunshots originated from Wilson's apartment, and that Dominic informed Wilson that it was Butler who fired the shots. In light of the evidence that Butler was last seen in Wilson's bedroom, the gunshots originated from Wilson's apartment, and the fact that the gun was found under his bedroom mattress, Butler's living quarters, we conclude that Butler was capable of maintaining dominion and control over the gun.

[21] Based on the foregoing, we conclude that the State proved specific facts that provided a solid basis to support a reasonable inference that Butler possessed the gun, and we therefore reject Butler's claim that there was insufficient evidence.

## II. *Inappropriate Sentence*[1]

[22] Ind. Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008), while the "character of the offender" permits a broader consideration of the defendant's character. *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing both prongs of the inquiry favor revision of his sentence. *Childress v. State*, 848

---

[1] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and Indiana Code section 35-38-1-13, the presentence investigation (PSI) report must be excluded from public access. However, in this case, the information contained in the PSI report "is essential to the resolution" of Butler's claim on appeal. Ind. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal

N.E.2d 1073, 1080 (Ind. 2006).  Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case.  *Cardwell*, 895 N.E.2d at 1224.

[23]  The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed.  *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012).  The sentencing range for a Level 4 felony is two to twelve years, with an advisory sentence of six years. Ind. Code § 35-50-2-5.5.  In the instant case, the trial court sentenced Butler to ten years for unlawful possession of a firearm by an SVF, a Level 4 felony.

[24]  Butler's appellate brief does not make a proper argument challenging his sentencing based on his character and nature of the offense.  Accordingly, he has waived this argument on appeal.  Ind. Appellate Rule 46(A)(8)(a).  Waiver notwithstanding, Butler's claims fail.

[25]  With respect to the nature of the offense, after Wilson confronted Butler about taking Dominic's money, Butler beat and choked Wilson.  Butler again choked Wilson with a pillow when she tried to escape.  Finally, when Wilson fled from her house and was walking to Tomlinson's house for safety, Butler met them and he was holding a gun.  Butler's armed pursuit of Wilson does not render his sentence inappropriate.

[26]  With respect to his character, Butler's entire adult life has been spent committing crimes.  Butler's criminal history began in 1995 when he was

charged with operating a motor vehicle without receiving a license. In the same year, he was charged with resisting law enforcement, but that charge was later dismissed. In the following year, 1996, Butler was charged with theft. Two other outstanding charges for disorderly conduct against Butler were later dismissed pursuant to his guilty plea to theft. The PSI shows that Butler's theft probation was revoked twice. In December of 1997, Butler was convicted of false informing and he was placed on probation for one year. In 1998, Butler pleaded guilty to possessing marijuana and he received another year of probation. In the same month, Butler was charged with dealing in a narcotic drug and he was sentenced to ten years, with six years executed and the remainder suspended to probation. In 2001, Butler was charged with operating a vehicle without having a license and was placed on one year of unsupervised probation. In March of 2002, Butler was again convicted of operating a motor vehicle without having been licensed and was sentenced to ten days in jail. In June of 2002, Butler was charged with resisting law enforcement and was sentenced to six months of unsupervised probation. In September of 2002, Butler was charged with domestic battery and false informing, but those charges were dismissed pursuant to a plea agreement in another cause. In October of 2002, Butler was convicted of possessing cocaine and was sentenced to three years in the DOC. Two years of Butler's previously-suspended drug dealing sentence were revoked based on Butler's cocaine-possession conviction. Between 2004 and 2005, Butler was charged with resisting law enforcement, domestic battery, and false informing. In June 2005, Butler was charged with possessing marijuana and was sentenced to two years in the DOC with one year

suspended to probation. In July of 2006, a petition to revoke Butler's marijuana-possession sentence was filed. Later that month, Butler was charged with domestic battery. In May of 2007, Butler was again charged with domestic battery. In November of 2007, Butler was charged and convicted of three Counts of dealing in cocaine, and was sentenced to twelve years in the DOC. In 2013, Butler was charged with driving with a suspended license. That same month, Butler was charged with criminal trespass and was sentenced to one year. Shortly before Butler committed the instant crimes, he was charged with unlawful possession of a firearm by an SVF and resisting law enforcement.

[27] At Butler's sentencing hearing, the trial court stated that it could not ignore Butler's extensive criminal history. Despite the fact that Butler has received lenient sentences in the past, including suspended sentences, fines, and probation, none of these measures were sufficient to deter him from committing the present offense. Accordingly, we decline to exercise our authority under Appellate Rule 7(B) to revise Butler's ten-year sentence in relation to unlawful possession of a firearm by an SVF.

### III. *Habitual Offender Enhancement*

[28] Lastly, Butler argues, and the State agrees, that the trial court, treated the habitual offender enhancement as a separate sentence to be served consecutively to his other ten-year sentence.

[29] We note that habitual offender is a status that results in an enhanced sentence. I.C. § 35-50-2-8(j). A habitual offender finding does not constitute a separate

crime nor does it result in a separate sentence. *Davis v. State*, 935 N.E.2d 1215, 1218 (Ind. Ct. App. 2010), *trans. denied*. When imposing a habitual offender enhancement, the trial court is required to "'attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced.'" *State v. Arnold*, 27 N.E.3d 315, 321 (Ind. Ct. App .2015) (quoting I.C. § 35-50-2-8(j)), *trans. denied*.

[30] The abstract of judgment lists a separate sentence for the habitual offender count and does not attach the habitual offender enhancement to Butler's sentences of strangulation, domestic battery or unlawful possession of a firearm by an SVF. Because the trial court did not specify which of Butler's convictions was enhanced by his habitual offender adjudication, we remand and instruct the trial court to revise the sentencing statement to reflect which conviction is enhanced.

## CONCLUSION

[31] In light of the foregoing, we conclude that (1) there was sufficient evidence to support Butler's possession of a firearm; (2) Butler's sentence for unlawful possession of a firearm by an SVF is not inappropriate in light of the nature of the offense and his character; and (3) we remand and instruct the trial court to revise the sentencing order to indicate which conviction is enhanced by Butler's habitual offender adjudication.

[32] Affirmed and remanded with instructions.

[33] Bailey, J. and Barnes, J. concur