# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 17 2017, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bernice A.N. Corley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tiara White,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 17, 2017<br><br>Court of Appeals Case No.<br>49A02-1702-CR-244<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Alicia Gooden, Judge<br><br>Trial Court Cause No.<br>49G21-1507-F2-26391 |

**Bailey, Judge.**

# Case Summary

[1] Tiara White ("White") appeals her conviction of Possession of a Narcotic Drug, as a Level 4 felony.[1] We affirm.

# Issues

[2] White presents two issues, which we restate as:

I. Whether the trial court abused its discretion in admitting evidence procured during a residential search because the search warrant was not supported by probable cause; and

II. Whether sufficient evidence supports her conviction.

# Facts and Procedural History

[3] On July 20, 2015, Brandon Beeler ("Beeler") died of a heroin overdose, and Detective Bridget Foy ("Detective Foy") of the Hancock County Sheriff's Department was dispatched to investigate his death. Beeler's mother, Kirsten Calhoun ("Calhoun") told Detective Foy that Beeler was addicted to heroin, and that when Calhoun went to wake Beeler for his rehabilitation appointment, she found Beeler in the bathroom of their New Palestine residence. Detective Foy located Beeler's body in the bathroom, and saw a syringe and a spoon with a white rock and powdery residue on the bathroom sink.

---

[1] Ind. Code §§ 35-48-4-6(a), -6(c). We refer throughout to those statutes in effect at the time of the offense.

[4] Further investigation led Detective Foy to speak with Angela Davis ("Davis"), who was with Beeler the night before his death, and with Isaac Williams ("Williams"), a friend of Beeler's who was also addicted to heroin. Based on information obtained from Davis and Williams, Detective Foy sought and obtained a warrant to search an apartment occupied by White and Jerry Turner ("Turner"). A subsequent search of the apartment yielded approximately 20 grams of heroin and more than $1,000 of cash in the master bedroom, as well as digital scales, razor blades, and plastic baggies in a kitchen drawer. White and Turner were arrested, and White was charged with Dealing in a Narcotic Drug, as a Level 2 felony;[2] Possession of a Narcotic Drug, as a Level 4 felony; and Maintaining a Common Nuisance, as a Level 6 felony.[3]

[5] During an August 22, 2016 bench trial, White objected to the admission of evidence procured during the search. White also moved for judgment on the evidence as to each count, and obtained judgement on the evidence as to the charge of Maintaining a Common Nuisance. The trial court took the remaining counts under advisement, and later found White guilty of Possession of a Narcotic Drug, and not guilty of Dealing in a Narcotic Drug.

[6] A sentencing hearing was held on January 12, 2017, and White received a sentence of six years, with three of those years to be executed, and three years

---

[2] I.C. § 35-48-4-1(a)(2).

[3] I.C. § 35-48-4-13(b)(1).

suspended. As to the executed time, the trial court ordered White to serve one year in the Department of Correction and two years in home detention.

[7] White now appeals.

# Discussion and Decision

## Admission of Evidence

[8] "Admission of evidence is generally left to the discretion of the trial court, and thus we review admissibility challenges for abuse of that discretion." *Jacobs v. State*, No. 49S02-1706-CR-438, slip op. at 3 (Ind. June 29, 2017). However, when "admissibility turns on questions of constitutionality relating to the search and seizure of that evidence, our review is *de novo*." *Id.*

[9] The Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution afford protection against warrants issued without probable cause, and the right is further codified in Indiana Code section 35-33-5-2. "The existence of probable cause is evaluated pursuant to the 'totality-of-the-circumstances' test." *Eaton v. State*, 889 N.E.2d 297, 299 (Ind. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). That is, "[i]n deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the [probable cause] affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular

place." *Jackson v. State*, 908 N.E.2d 1140, 1142 (Ind. 2009) (quoting *Gates*, 462 U.S. at 238).

[10] When a reviewing court—whether a trial court or appellate court—evaluates the existence of probable cause, the court is to determine whether the magistrate issuing the search warrant had a "'substantial basis' for concluding that probable cause existed." *Id.* (citing *Gates*, 462 U.S. at 238-239). "A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Id.*

[11] In challenging the existence of probable cause, White focuses on whether the information provided by Davis and Williams was sufficiently reliable or corroborated to justify issuance of the search warrant. Information obtained from informants must be reliable under the totality of the circumstances. *Kellems v. State*, 842 N.E.2d 352, 356 (Ind. 2006), *reversed on reh'g on other grounds*; *see also Gates*, 462 U.S. at 232 (noting that "[r]igid legal rules are ill-suited to an area of such diversity" as evaluating the reliability of information provided in support of a search warrant application). Moreover, when a probable cause affidavit is based on hearsay, the affidavit must either:

> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

I.C. § 35-33-5-2(b). Furthermore, "[a]s a general rule, stale information will not support a finding of probable cause." *Shell v. State*, 927 N.E.2d 413, 418 (Ind. Ct. App. 2010). However, staleness cannot be determined by "merely counting the number of days between the occurrence of the facts relied upon and the warrant's issuance." *Id.* Rather, whether information is stale "must be determined by the facts and circumstances of each particular case." *Id.*

[12] Here, the probable cause affidavit included information obtained through separate interviews with Davis and Williams, both of whom willingly cooperated with police. From Davis, Detective Foy learned that on the evening before his death, Beeler said that he owed someone money and needed to go pay him. Beeler borrowed Davis's phone and twice tried to call a certain phone number. Someone with that phone number later called back, and Beeler spoke with the caller for a few minutes. Davis thought that Beeler called the person "Juicy Jay" or "Juice." After the call, Beeler asked Davis to drive him toward the Lawrence area so that he could pay the person. Beeler then directed Davis to an apartment complex off of 46th Street in Indianapolis. Davis waited in the car while Beeler went into a building and returned.

[13] After stopping at the apartment complex, Beeler wanted to visit a Wal-Mart store so that he could purchase allergy medicine. When they reached the store, Davis again waited in the car, and grew suspicious when it took twenty-five minutes for Beeler to return with a Wal-Mart bag. Beeler was also acting

differently when he returned. At Beeler's suggestion, the two then went back to his New Palestine residence, where Beeler went into the bathroom for several minutes. Both Davis and Calhoun checked on Beeler by speaking with him through the door, and Beeler eventually flushed the toilet, ran the sink for a several minutes, and emerged. By this point, Davis was annoyed with Beeler and left the residence around 11:30 p.m. Davis later sent Beeler a text message around 2:00 a.m. that was marked "read" by Beeler, but Davis did not receive a response from Beeler, who died at some point later that morning.

[14] Davis agreed to drive Detective Foy to the apartment complex in Indianapolis, noting that she was uncertain how to get there because Beeler had navigated, but that she remembered what the apartments looked like. However, after a few hours of looking, Davis was unable to locate the apartment complex.

[15] Detective Foy then learned from Calhoun that Williams—Beeler's friend, who was also addicted to heroin—may be able to locate "Juice." Detective Foy spoke with Williams, who said he was familiar with "Juice," and had been to "Juice's" apartment several times while Beeler bought heroin. Williams provided an Alsuda Court address, and identified the specific apartment as being on the bottom floor in the back to the left—police later learned that this description fit the location of Apartment C. Williams also gave Detective Foy a phone number for "Juice" that matched the one that Beeler had called, and a review of Beeler's phone records showed several calls to and from that number.

[16] Detective Foy contacted Davis, who agreed to again try to locate the apartment complex she had visited with Beeler. Detective Foy drove to the area of 46th Street and Fall Creek Parkway in Indianapolis, and Davis was able to guide Detective Foy from that point. Davis identified the building Beeler entered, which had the same Alsuda Court address provided by Williams.

[17] Based upon this information, a warrant was issued, and the police conducted a search of Apartment C three days after Beeler's death.

[18] In challenging the existence of probable cause, White focuses on the reliability of the information provided by Davis and Williams, and points out that only Williams gave sufficient information to identify Apartment C. White contends that the information provided by Davis alone "lends no facts that would lead a reasonably prudent person to believe that a search of the premises [would] uncover evidence of narcotics" in Apartment C. Appellant's Br. at 12. White also notes that Williams gave no timeline concerning his observation of drug activity occurring at the apartment, and argues that this information is stale.

[19] Although White parses aspects of the information provided by both Williams and Davis, the essential inquiry is whether the information was reliable under the totality of the circumstances. Here, Davis and Williams both directed police to a person named "Juice," provided the same phone number for this person, identified the same apartment building, and informed police that Beeler had been in contact with "Juice." According to Williams, Beeler bought heroin at "Juice's" apartment, and according to Davis, Beeler had visited an apartment

to pay "Juice" on the night before Beeler died of a heroin overdose. Even if Williams did not provide a timeline for his encounters with "Juice," Davis provided fresh information corroborating Williams's account, including that Beeler acted differently after spending a prolonged time alone in a Wal-Mart shortly after leaving the apartment. The information provided supports the reasonable inference that Beeler obtained heroin while at the apartment.

[20] Ultimately, our review of the probable cause affidavit leads us to conclude that the information contained therein was sufficiently reliable under the totality of the circumstances, with the accounts of Davis and Williams matching in key respects. Moreover, staleness did not render the information unreliable. Thus, the warrant was supported by probable cause, and the trial court properly admitted evidence obtained during the search.[4]

## Sufficiency of the Evidence

[21] When reviewing the sufficiency of the evidence, we look only at the probative evidence and reasonable inferences supporting the judgment. *Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017). We do not assess the credibility of witnesses or reweigh the evidence, and will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

---

[4] Having concluded that the warrant was supported by probable cause, we do not reach White's alternative contention that the police could not rely on the good-faith exception to the probable cause requirement.

[22]     To convict White of Possession of a Narcotic Drug as charged, the State was required to prove that White knowingly or intentionally possessed at least ten but less than twenty-eight grams of heroin. *See* I.C. § 35-48-4-6(a), -6(c). White does not dispute that a sufficient quantity of heroin was found in her residence, but challenges whether the State proved that she knowingly or intentionally possessed the drugs.

[23]     To satisfy the element of possession, the State may prove actual possession or constructive possession. *Sargent v. State*, 27 N.E.3d 729, 732-33 (Ind. 2015). "Actual possession occurs when a person has direct physical control over the item" whereas constructive possession occurs when the person has (1) the capability to maintain dominion and control over the item, and (2) the intent to maintain dominion and control over the item. *Id.* Here, given White's absence when the drugs were seized, the State sought to prove constructive possession.

[24]     The evidence favorable to the judgment indicates that police found twenty grams of heroin in the master bedroom of an apartment White shared with Turner. The heroin was in a nightstand drawer. A picture of White was in the bedroom, and her name badge was on top of a shared dresser. In that dresser, the police found more than $1,000 in cash, mostly in $20 denominations, which is a denomination frequently used to purchase heroin. Moreover, a drawer in the kitchen contained several items associated with drug activity—digital scales, a razor blade, and plastic baggies with torn-off corners.

Generally, "[t]he proof of a possessory interest in the premises on which illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question." *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004). However, where, as here, "possession of the premises on which drugs are found is not exclusive, then the inference of intent to maintain dominion and control over the drugs 'must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence.'" *Id.* at 341 (quoting *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g on other grounds*). The location of contraband "has been identified as an additional circumstance from which a trier of fact could conclude that the defendant had the requisite intent." *Id.* at 344.

White contends that the requisite proof of additional circumstances was lacking because no possessions attributable to her were found in the nightstand drawer with the heroin, there was men's clothing in the drawers with the cash, and the items in the kitchen were not "inherently criminal in nature." Appellant's Br. at 18. White argues that this case is factually similar to *Gee*, in which our supreme court reversed several drug-related convictions where drugs in a shared residence were found in basement laundry room cabinets. In reversing the convictions, the Court specifically noted that basement laundry room cabinets were unlike other more frequently used areas of the home, observing that "nothing in human experience tells us that anyone in particular, as a matter of course, is in and out of laundry room cabinets." *Gee*, 810 N.E.2d at 344. Here, however, the contraband was found in an area far more personal to White—her

shared bedroom—and additional evidence found in the shared dresser and the kitchen supports the inference that White knew of the presence of heroin and its illegal character. Accordingly, there is sufficient evidence from which the trier of fact could conclude that White constructively possessed the contraband.

## Conclusion

The trial court did not abuse its discretion in admitting evidence procured during the search. There is sufficient evidence supporting White's conviction.

Affirmed.

Vaidik, C.J., and Robb, J., concur.