## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 15 2019, 9:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

S. Neal Ziliak
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Berry J. Blackwell,
*Appellant-Defendant,*

*v.*

State of Indiana,
*Appellee-Plaintiff.*

May 15, 2019

Court of Appeals Case No.
18A-CR-2867

Appeal from the Hamilton
Superior Court

The Hon. Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1803-F2-1935

**Bradford, Judge.**

# Case Summary

[1]     After responding to a report of a shot fired inside a residence during a domestic dispute, officers obtained a search warrant authorizing them to search the house for firearms, ammunition, and related items. When searching the basement in which Berry Blackwell was living, officers found, *inter alia*, over ten grams of methamphetamine, a digital scale, a chemical used as a cutting agent for methamphetamine, and a baggie corner. Blackwell was eventually tried for and convicted of Level 2 felony dealing in methamphetamine, Level 4 felony methamphetamine possession, and Class C misdemeanor paraphernalia possession and was found to be a habitual offender. The trial court sentenced Blackwell to an aggregate sentence of forty years of incarceration. Blackwell contends that the search of the basement violated both the United States and Indiana constitutions, the State produced insufficient evidence to sustain his convictions, and his sentence is inappropriately harsh. Because we disagree with all of Blackwell's contentions, we affirm.

# Facts and Procedural History

[2]     Shortly after 8:00 a.m. on March 14, 2018, Deputy Scott Hazel, Sergeant Dustin Dixon, and other officers from the Hamilton County Sheriff's Department responded to a report of a disturbance and a shot fired inside a residence at 14539 East 256th Street ("the Residence"). The officers arrived to find Jessica Edwards and another female outside. Edwards told the officers that Blackwell had fired a shot inside the residence, may have injured himself, and

Blackwell and Nick Hanna were still inside the Residence. When Deputy Hazel signaled to Blackwell to come outside, he did, and Hanna soon followed. Officers requested, and were refused, permission to enter and search the Residence.

[3] Sergeant Dixon applied for a search warrant and averred in his affidavit for probable cause that (1) Edwards initially reported to the authorities that a shot had been fired inside the residence and that Blackwell may have shot himself, (2) Edwards told officers when they arrived that Blackwell had fired a shot inside the Residence, (3) Blackwell owned a handgun, and (4) investigation had revealed that Blackwell could not legally possess a handgun and was the subject of an active order of protection regarding Edwards. Sergeant Dixon obtained a search warrant for the Residence authorizing a search for "any firearm, ammunition, firearm accessory that is capable of being fired and/or projected. Also, any evidence in the structure that would lead a reasonable person to believe that a firearm had been recently fired." State's Ex. 38.

[4] In the basement, in which Blackwell had been living, Deputy Hazel discovered several glass pipes used for smoking illegal drugs, many of which were broken, and a glass "bong[.]" Tr. Vol. III p. 38. Deputy Hazel located a keyring next to an air mattress that had keys for Blackwell's Subaru and for a padlock on a red toolbox in the basement. A small glass jar on top of the toolbox contained dimethyl sulfone, a cutting agent for methamphetamine. When Deputy Hazel opened the locked toolbox, he discovered the title for Blackwell's Subaru, a digital scale, 10.93 grams of methamphetamine, and a ripped baggie corner

commonly used for packaging methamphetamine. Small baggies containing marijuana were found in a different area of the toolbox.

[5] On March 15, 2018, the State charged Blackwell with a total of nine counts and, on April 23, 2018, alleged that he was a habitual offender. On May 14, 2018, the trial court denied Blackwell's motion to suppress the evidence seized from the Residence. On May 15, 2018, Blackwell was tried for Level 2 felony dealing in methamphetamine, Level 4 felony methamphetamine possession, Class B misdemeanor marijuana possession, Class C misdemeanor paraphernalia possession, and the habitual offender allegation. A jury found Blackwell guilty as charged, with the exception of the marijuana-possession charge, which was dismissed. On October 25, 2018, the trial court merged Blackwell's methamphetamine-possession conviction with his dealing conviction and sentenced him to concurrent terms of twenty-five years for methamphetamine dealing and sixty days for paraphernalia possession, to be enhanced fifteen years by virtue of his status as a habitual offender.

# Discussion and Decision

## I. Search and Seizure

[6] Blackwell contends that the trial court abused its discretion in admitting evidence seized from the Residence pursuant to the search warrant. The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans. denied*. We will only reverse a trial court's decision on the admissibility of evidence upon a showing

of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied.* We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied.* Specifically, Blackwell contends that the search in this case violated his rights against unreasonable searches and seizures, and it is well-settled that evidence obtained in violation of the Fourth Amendment to the United States Constitution and/or Article 1, Section 11, of the Indiana Constitution cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 655 (1962); *Callender v. State*, 193 Ind. 91, 96–97, 138 N.E. 817, 818–19 (1923).

## A. Fourth Amendment

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted

intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). "In *Wolf* [*v. People of State of Colorado*, 338 U.S. 25, 27 (1949) (overruled on other grounds by *Mapp*, 367 U.S. at 643] we recognized '(t)he security of one's privacy against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Id.*

[8]     Blackwell concedes that the search warrant for the Residence was supported by probable cause and does not dispute that

> [a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

*United States v. Ross*, 456 U.S. 798, 820–21 (1982).

[9]     Blackwell seems to argue only that Deputy Hazel exceeded the scope of the search warrant because the items seized were drugs and drug-related items, not firearms or related items. In other words, Blackwell essentially argues that police may not legally seize items that were not the original target of the search. This argument is without merit.

[10]     Police may seize evidence not identified in a warrant under the plain view doctrine. The plain view doctrine allows a police officer to seize items when he inadvertently discovers items of readily apparent criminality while rightfully occupying a particular location. First, the initial intrusion must have been authorized under the Fourth Amendment. Second, the items must be in plain view. Finally, the incriminating nature of the evidence must be immediately apparent.

*Jones v. State*, 783 N.E.2d 1132, 1137 (Ind. 2003) (citations omitted). In other words, the fact that the various items that were ultimately used to convict Blackwell were not specifically mentioned in the search warrant does not make their seizure illegal. Blackwell does not even contend, much less establish, that the officers did not have the right to search the basement or the toolbox, the items seized were not in plain view, or their incriminating nature was not readily apparent. As such, Blackwell has failed to establish an abuse of discretion in this regard.

## B.  Article 1, Section 11

Blackwell also challenges admission of the evidence pursuant to Article 1, Section 11, of the Indiana Constitution, which provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The Indiana Supreme Court has noted that

> [w]hile almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001); *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999); *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005) (citing *Moran*, 644 N.E.2d at 539). "We believe that the totality of the

circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* at 360. In *Litchfield*, we summarized this evaluation as follows:

> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

*Id.* at 361.

*Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005).

[13] First, we conclude that the police had a reasonably high degree of suspicion that at least one crime, if not several, had been committed. Officers responded to a report that Blackwell had fired a shot inside the Residence and were told the same thing again by Edwards when they arrived. Hanna indicated that he had heard what he believed to be some sort of firework exploding inside the house, which is consistent with a gunshot. Officers also determined that Blackwell could not legally possess a firearm and was likely in violation of an active order of protection, information that indicates a strong likelihood of criminality. Based on the information available to them, officers had a high degree of suspicion that at least one violation had occurred.

[14] The degree of intrusion in this case was high, as a thorough search of a residence occurred, including locked containers. That said, the search was conducted pursuant to what Blackwell essentially concedes was a valid search

warrant and, as Blackwell also does not dispute, did not go beyond searching any place that could not have concealed a firearm, ammunition, or related items.

[15] That said, the needs of law enforcement were also high, as the officers were responding to a report of a shot fired during an argument by a person who could not legally possess a firearm and was likely in violation of an order of protection. At the very least, there was ample reason to believe that Blackwell had committed several crimes, and the officers had a clear interest in collecting evidence related to those potential crimes. In summary, although the level of intrusion and disruption was fairly high, it did not exceed the scope of the concededly valid search warrant and was easily justified by the level of certainty that a violation had occurred and the needs of law enforcement. Blackwell has failed to establish that his rights pursuant to Article 1, Section 11 were violated.

## II. Sufficiency of the Evidence

[16] Blackwell contends that the State failed to produce evidence sufficient to sustain his convictions for Level 2 felony dealing in methamphetamine and the merged Level 4 felony methamphetamine possession. When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995). We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id.* If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the

conviction. *Spangler v. State*, 607 N.E.2d 720, 724 (Ind. 1993). To convict Blackwell of dealing in methamphetamine the State was required to establish that he knowingly possessed, with intent to deliver, at least ten grams of methamphetamine. Ind. Code § 35-48-4-1.1(a)(2). To convict Blackwell of possession of methamphetamine the State was required to establish that he knowingly possessed at least ten grams of methamphetamine. Ind. Code § 35-48-4-6.1(a).

## A. Possession

[17] Blackwell contends that the State failed to establish that he possessed the methamphetamine that supported his dealing and possession charges. Although the methamphetamine was not found on Blackwell's person,

> [t]here is […] no requirement that the accused's actual possession of the contraband must be shown to have existed at precisely the same time as the law enforcement agency's discovery of the contraband. Put another way, conviction for possessory offenses does not depend on the accused being "caught red-handed" in the act by the police.

*Wilburn v. State*, 442 N.E.2d 1098, 1101 (Ind. 1982).

[18] Cases, like this one, where the State seeks to prove that the defendant's possession of the contraband occurred at a time other than its discovery are referred to as "constructive possession" cases.

> A defendant is in the constructive possession of drugs when the State shows that the defendant has both (i) the intent to maintain dominion and control over the drugs and (ii) the capability to maintain dominion and control over the drugs. *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *on reh'g*, 685 N.E.2d 698 (Ind.

1997).  The proof of a possessory interest in the premises on which illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question. *Davenport v. State*, 464 N.E.2d 1302, 1307 (Ind. 1984).  In essence the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises.  *See id.*; *Martin v. State*, 175 Ind. App. 503, 372 N.E.2d 1194, 1197 (1978) ("[A] house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee.").  And this is so whether possession of the premises is exclusive or not.

However, the law takes a different view when applying the intent prong of constructive possession.  When a defendant's possession of the premises on which drugs are found is not exclusive, then the inference of intent to maintain dominion and control over the drugs "must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence."  *Lampkins*, 682 N.E.2d at 1275.

*Gee v. State*, 810 N.E.2d 338, 340–41 (Ind. 2004).  A non-exhaustive list of what such additional circumstances may be includes "(1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant."  *Gee*, 810 N.E.2d at 341 (citing *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999)).[1]  As we have noted, "[i]n each of these instances

---

[1] We wish to emphasize that this list is nothing more than a collection of circumstances that have been found sufficient to prove constructive possession in particular cases, *not* a test with elements to be satisfied or factors to be weighed.  In many cases, some of the listed circumstances will simply not be relevant.

of 'additional circumstances' exists the probability that the presence and character of the contraband was noticed by the defendant. Accordingly, the listed circumstances are not exhaustive. Other circumstances could just as reasonably demonstrate the requisite knowledge." *Carnes v. State*, 480 N.E.2d 581, 586 (Ind. Ct. App. 1985) (collecting cases that contain the "additional circumstances" comprising the list in *Gee*).

[19] Here, although Blackwell was living in the Residence, his control over it was not exclusive. The State was therefore required to establish additional circumstances pointing to Blackwell's knowledge of the methamphetamine's presence and its nature. We conclude that the State has done this. During a search of the Residence, officers found 10.93 grams of methamphetamine in the basement. There is evidence that Blackwell was the only person who lived in the basement and would come and go with his own key. The jury also heard testimony from the other residents that they were unaware of any methamphetamine in the basement. Blackwell's degree of control over the basement tends to show his knowledge of the methamphetamine's presence and its nature. Even more compelling, however, is the proximity to, and intermingling of his possessions with, the methamphetamine. The methamphetamine was found close to Blackwell's bed, and the officers accessed a locked compartment of the toolbox with a key from Blackwell's keychain. Inside the toolbox which contained the methamphetamine, officers also found the title for Blackwell's Subaru. Blackwell's toolboxes were under his control in his living space, and the one that contained the methamphetamine was locked

and could only be unlocked with a key on his keychain. We conclude that these circumstances establish that Blackwell constructively possessed the methamphetamine in question.

## B. Intent to Deliver

[20] Blackwell also contends that the State failed to establish that he had the intent to deliver the methamphetamine. Under the circumstances of this case, the State was required to produce "evidence in addition to the weight of the drug that the person intended to deliver or finance the delivery of the drug[.]" Ind. Code § 35-48-4-1.1(b)(1). It is well-settled that a conviction for possession with intent to deliver illegal drugs may be supported by either direct or circumstantial evidence. *See, e.g.*, *Montego v. State*, 517 N.E.2d 74, 76 (Ind. 1987). Intent involves a person's state of mind, and the fact finder can "infer its existence from surrounding circumstances when determining whether the requisite intent exists." *Goodner v. State*, 685 N.E.2d 1058, 1062 (Ind. 1997).

[21] Here, the amount of methamphetamine recovered was almost eleven grams. Hamilton County Sheriff's Sergeant Mike Howell testified that eleven grams was more than the amount a typical user would have, which would generally range from one-tenth of a gram up to three and one-half grams, an amount known as an "eight-ball[.]" Tr. Vol. III p. 210. The State also produced evidence that the officers recovered a digital scale, a cutting agent, and the ripped corner of a baggie. Sergeant Howell testified that drug dealers typically use a scale to weigh their product, a cutting agent to dilute it, and baggie corners to package it. We conclude that this evidence, when considered along

with the amount, is sufficient to support an inference that Blackwell intended to deliver the methamphetamine in his possession. Blackwell notes that the State failed to produce evidence that he had actually delivered any methamphetamine to any other person. As mentioned, however, a dealing conviction can be supported by either direct or circumstantial evidence, and the record contains more than enough of the latter. Blackwell's argument is nothing more than an invitation to reweigh the evidence, which we will not do. *See Jordan*, 656 N.E.2d at 817.

# III. Sentence

Blackwell contends that his forty-year sentence is inappropriate. We will revise a sentence only if, upon "due consideration of the trial court's decision" it nonetheless appears that "the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482, 490–91 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). The "nature of the offense" refers to the defendant's acts in comparison with the elements of his offense, *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008), while "character of the offender" refers to general sentencing considerations and the relevant aggravating and mitigating circumstances. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Blackwell has the burden to show his sentence is inappropriate in light of both the nature of the offense and his character. *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013). This can only be done with "compelling evidence portraying in a positive light the nature of the offense […] and the defendant's character." *Stephenson v. State*, 29

N.E.3d 111, 122 (Ind. 2015). The trial court sentenced Blackwell to twenty-five years of incarceration for Level 2 felony dealing in methamphetamine and sixty days for paraphernalia possession (to be served concurrently), enhanced by fifteen years due to his habitual offender status. The sentencing range for a Level 2 felony is ten to thirty years, Ind. Code § 35-50-2-4.5, and the habitual-offender enhancement could have been from six to twenty years in this case. Ind. Code § 35-50-2-8(b); -8(i).

[23] The nature of Blackwell's offenses does not warrant a reduction in his sentence. Blackwell possessed a large quantity of methamphetamine that he was preparing to sell in his community. Methamphetamine use is a long-standing and very serious problem in Indiana, and Blackwell was making that problem worse. Moreover, it is worth noting that Blackwell was not given anything near the maximum sentence he could have received.

[24] Moreover, Blackwell's character, as reflected by his lengthy criminal history, also fully supports the imposition of an enhanced sentence. Blackwell, born in 1983, was adjudicated a juvenile delinquent for disorderly conduct, public intoxication, inhaling toxic vapors, burglary, operating a vehicle without a license, two counts of auto theft, and two counts of resisting law enforcement. As an adult, Blackwell has previous convictions for Level 6 felony methamphetamine possession, Class D felony criminal mischief, Class D felony residential entry, Class D felony intimidation, and three counts of Class D felony theft. Blackwell also has fifteen previous misdemeanor convictions, most related to substance abuse.

Despite Blackwell's frequent brushes with the law, more lenient measures have failed. Blackwell has been placed on probation six times and has had it revoked five times, placed on community corrections (also revoked), and sentenced to five terms in the Department of Correction. While awaiting trial in this case in the Hamilton County Jail, Blackwell was charged with several rule violations. Despite his alarming criminal history and numerous opportunities to reform himself, Blackwell has not chosen to do so. In fact, Blackwell seems to be moving in the opposite direction, as his latest crimes are his most serious to date. Blackwell's poor character fully justifies his forty-year sentence in this case.

The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.